LATHAM & WATKINS LLP
Melanie M. Blunschi (Bar No. 234264)
*melanie.blunschi@lw.com*
Nicholas Rosellini (Bar No. 316080)
*nick.rosellini@lw.com*
Alisha Nguyen (Bar No. 344450)
*alisha.nguyen@lw.com*
Carmen Crossley (Bar No. 344856)
*carmen.crossley@lw.com*
505 Montgomery St., Suite 2000
San Francisco, CA 94111
Telephone: +1.415.391.0600

Gary Feinerman (*pro hac vice*)
*gary.feinerman@lw.com*
Kathryn K. George (*pro hac vice*)
*katie.george@lw.com*
330 N. Wabash Ave., Suite 2800
Chicago, IL 60611
Telephone: +1.312.876.7700

*Attorneys for Defendant*
*Meta Platforms, Inc.*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

NICHOLAS ROBINSON, individually and on behalf of all others similarly situated,

Plaintiff,

v.

META PLATFORMS, INC.,

Defendant.

Case No. 3:26-cv-01616-CRB

**DEFENDANT META PLATFORMS, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS CLASS ACTION COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

Hearing: June 26, 2026
Time: 10:00 a.m.
Location: Courtroom 6—17th Floor
Judge: Hon. Charles R. Breyer

## NOTICE OF MOTION AND MOTION

**PLEASE TAKE NOTICE** that on Friday, June 26, 2026 at 10:00 a.m., before the Honorable Charles R. Breyer, United States District Court, Courtroom 6, 17th Floor, 450 Golden Gate Avenue San Francisco, California, Defendant Meta Platforms, Inc. ("Meta") will and hereby does move for an order dismissing Plaintiff Nicholas Robinson's ("Plaintiff") Class Action Complaint ("Complaint") (Dkt. 1-1) for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). This motion is based on this notice of motion; the memorandum of points and authorities in support thereof that follows; the proposed order filed concurrently herewith; the request for judicial notice and accompanying declaration; the pleadings, records, and papers on file in this action; oral argument; and any other matters properly before the Court.

## STATEMENT OF ISSUE TO BE DECIDED

Whether the Court should dismiss the Complaint with prejudice for failure to state a claim upon which relief can be granted under Rule 12(b)(6).

Dated: April 13, 2026

Respectfully submitted,

LATHAM & WATKINS LLP

By: /s/ *Melanie M. Blunschi*
Melanie M. Blunschi (Bar No. 234264)
*melanie.blunschi@lw.com*
Nicholas Rosellini (Bar No. 316080)
*nick.rosellini@lw.com*
Alisha Nguyen (Bar No. 344450)
*alisha.nguyen@lw.com*
Carmen Crossley (Bar No. 344856)
*carmen.crossley@lw.com*
505 Montgomery St., Suite 2000
San Francisco, CA 94111
Telephone: +1.415.391.0600

Gary Feinerman (*pro hac vice*)
*gary.feinerman@lw.com*
Kathryn K. George (*pro hac vice*)
*katie.george@lw.com*
330 N. Wabash Ave., Suite 2800
Chicago, IL 60611
Telephone: +1.312.876.7700

*Attorneys for Defendant Meta Platforms, Inc.*

# TABLE OF CONTENTS


Page

TABLE OF AUTHORITIES ........ iii

SUMMARY OF ARGUMENT ........ viii

MEMORANDUM OF POINTS AND AUTHORITIES ........ 1

I. BACKGROUND ........ 1

A. Statutory Background ........ 1

B. Factual Background ........ 2

C. Procedural History ........ 4

II. LEGAL STANDARD ........ 5

III. ARGUMENT ........ 5

A. Plaintiff Does Not Allege Any Cognizable “Damage Or Loss” ........ 6

1. CDAFA Requires Concrete Harms To Computer Systems Or Data ........ 6

2. Plaintiff’s Contrary Interpretation Is Untenable ........ 8

B. Meta Did Not “Knowingly” Act “Without Permission” ........ 10

1. Plaintiff Voluntarily Gave Meta His Data And Consented To Its Use ........ 10

2. Plaintiff Cannot Establish That Meta “Knowingly” Lacked Permission ........ 13

C. Dismissal With Prejudice Is Warranted ........ 15

IV. CONCLUSION ........ 15

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**


*Apple Inc. v. Superior Ct.*,
56 Cal. 4th 128 (2013) .......... 9

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......... 5

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .......... 5

*Bridges v. Blackstone Grp., Inc.*,
2022 WL 2643968 (S.D. Ill. July 7, 2022) .......... 13

*Brodsky v. Apple Inc.*,
445 F. Supp. 3d 110 (N.D. Cal. 2020) .......... 15

*Brown v. Google LLC*,
685 F. Supp. 3d 909 (N.D. Cal. 2023) .......... 8

*Bui-Ford v. Tesla, Inc.*,
2024 WL 694485 (N.D. Cal. Feb. 20, 2024) .......... 7

*Cal. Priv. Prot. Agency v. Superior Ct.*,
99 Cal. App. 5th 705 (2024) .......... 9

*Carpenter v. McDonald's Corp.*,
580 F. Supp. 3d 512 (N.D. Ill. 2022) .......... 13

*Casey v. Toyota Motor Eng'g & Mfg. N. Am., Inc.*,
770 F.3d 322 (5th Cir. 2014) .......... 13

*Chegg, Inc. v. Doe*,
2023 WL 4315540 (N.D. Cal. July 3, 2023) .......... 14

*Claridge v. RockYou, Inc.*,
785 F. Supp. 2d 855 (N.D. Cal. 2011) .......... 6

*Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc.*,
911 F.2d 242 (9th Cir. 1990) .......... 15

*Cottle v. Plaid Inc.*,
536 F. Supp. 3d 461 (N.D. Cal. 2021) .......... 7

*Delgado v. Meta Platforms, Inc.*,
No. 23-cv-04181-SI (N.D. Cal. Aug. 16, 2023) .......... 4

*Doe v. Eating Recovery Ctr. LLC*,
806 F. Supp. 3d 1109 (N.D. Cal. 2025) .......... 7

*Doe v. Meta Platforms, Inc.*,
690 F. Supp. 3d 1064 (N.D. Cal. 2023) .......... 6, 8, 9

*Gamez v. VF Corp.*,
2018 WL 6333560 (C.D. Cal. Nov. 21, 2018) .......... 13

*Gonzalez v. Uber Techs., Inc.*,
305 F. Supp. 3d 1078 (N.D. Cal. 2018) .......... 15

*Griffith v. TikTok, Inc.*,
697 F. Supp. 3d 963 (C.D. Cal. 2023) .......... 8

*Guillon v. AMCO Ins. Co.*,
2021 WL 254264 (N.D. Cal. Jan. 26, 2021) (Breyer, J.), *aff'd*, 2021 WL 6102174 (9th Cir. Dec. 22, 2021) .......... 15

*Gutierrez v. Converse Inc.*,
2023 WL 8939221 (C.D. Cal. Oct. 27, 2023) .......... 15

*Hazel v. Prudential Fin., Inc.*,
2023 WL 3933073 (N.D. Cal. June 9, 2023) .......... 8

*Heiting v. Taro Pharms. USA, Inc.*,
709 F. Supp. 3d 1007 (C.D. Cal. 2023) .......... 1, 6, 8

*In re Connetics Corp. Secs. Litig.*,
542 F. Supp. 2d 996 (N.D. Cal. 2008) .......... 11

*In re Facebook Priv. Litig.*,
791 F. Supp. 2d 705 (N.D. Cal. 2011) .......... 15

*In re Facebook, Inc. Internet Tracking Litigation*,
956 F.3d 589 (9th Cir. 2020) .......... 9

*In re Facebook, Inc., Consumer Priv. User Profile Litig.*,
402 F. Supp. 3d 767 (N.D. Cal. 2019) .......... 8

*In re Google Assistant Priv. Litig.*,
546 F. Supp. 3d 945 (N.D. Cal. 2021) .......... 8

*In re iPhone Application Litig.*,
2011 WL 4403963 (N.D. Cal. Sep. 20, 2011) .......... 14

*Kirby as Co-Trs. of William Warner Kirby 2014 Tr. v. AT&T Corp.*,
2022 WL 17184565 (S.D. Cal. Nov. 23, 2022) .......... 14

*McClung v. AddShopper, Inc.*,
2024 WL 189006 (N.D. Cal. Jan. 17, 2024) ........ 9

*McGoveran v. Amazon Web Servs., Inc.*,
2023 WL 2683553 (D. Del. Mar. 29, 2023) ........ 13

*Meta Platforms, Inc. v. Nguyen*,
2023 WL 8686924 (N.D. Cal. Nov. 21, 2023) ........ 11

*Nowak v. Xapo, Inc.*,
2020 WL 6822888 (N.D. Cal. Nov. 20, 2020) ........ 7

*Oracle USA, Inc. v. Rimini St., Inc.*,
879 F.3d 948 (9th Cir. 2018), *rev'd on other grounds*, 586 U.S. 334 (2019)........ 12

*PartyLite Gifts, Inc. v. Morris*,
2006 WL 8434715 (C.D. Cal. Feb. 21, 2006)........ 13

*People v. Hawkins*,
98 Cal. App. 4th 1428 (2002) ........ 2

*Popa v. Microsoft Corp.*,
153 F.4th 784 (9th Cir. 2025) ........ 9

*Pratt v. Higgins*,
2023 WL 4564551 (N.D. Cal. July 17, 2023)........ 6, 8

*Rehaif v. United States*,
588 U.S. 225 (2019)........ 14

*Rodriguez v. Google LLC*,
772 F. Supp. 3d 1093 (N.D. Cal. 2025) ........ 8

*Rosenbach v. Six Flags Ent. Corp.*,
129 N.E.3d 1197 (Ill. 2019) ........ 4

*Satmodo, LLC v. Whenever Commc'ns, LLC*,
2017 WL 1365839 (S.D. Cal. Apr. 14, 2017)........ 15

*Shah v. Cap. One Fin. Corp.*,
768 F. Supp. 3d 1033 (N.D. Cal. 2025) ........ 8

*Silver v. Stripe Inc.*,
2021 WL 3191752 (N.D. Cal. July 28, 2021)........ 10

*Sunbelt Rentals, Inc. v. Victor*,
43 F. Supp. 3d 1026 (N.D. Cal. 2014) ........ 1, 15

*Temple of 1001 Buddhas v. City of Fremont*,
588 F. Supp. 3d 1010 (N.D. Cal. 2022) ........ 11

*Ticketmaster L.L.C. v. Prestige Ent. W., Inc.*,
315 F. Supp. 3d 1147 (C.D. Cal. 2018) .......... 1

*Trader Joe's Co. v. Trader Joe's United*,
150 F.4th 1040 (9th Cir. 2025) .......... 5

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) .......... 9

*Tsering v. Meta Platforms, Inc.*,
2026 WL 89320 (N.D. Cal. Jan. 12, 2026) .......... 2, 14

*United States v. Collazo*,
984 F.3d 1308 (9th Cir. 2021) .......... 14

*Van Buren v. United States*,
593 U.S. 374 (2021) .......... 1, 7

*Wendover Prods., LLC v. Paypal Inc.*,
2025 WL 3251667 (N.D. Cal. Nov. 21, 2025) .......... 12, 13

*Wesch v. Yodlee, Inc.*,
2021 WL 1399291 (N.D. Cal. Feb. 16, 2021) .......... 7

## STATUTES

18 U.S.C. § 922(g) .......... 14

18 U.S.C. § 1030(e)(11) .......... 7

18 U.S.C. § 1030(e)(8) .......... 7

18 U.S.C. § 1030(g) .......... 7

740 ILCS 14/1 *et seq.* .......... 4

740 ILCS 14/10 .......... 5

740 ILCS 14/15(b) .......... 5

740 ILCS 14/20 .......... 5

Cal. Civ. Code § 1798.100 *et seq.* .......... 5

Cal. Civ. Code § 1798.100(a)(1) .......... 9

Cal. Civ. Code § 1798.130(c) .......... 11

Cal. Civ. Code § 1798.140(ae)(2)(A) .......... 11

Cal. Civ. Code § 1798.140(c) .......... 11

Cal. Civ. Code § 1798.150 ..... 10

Cal. Civ. Code § 1798.150(a)(1) ..... 5, 10

Cal. Civ. Code § 1798.150(c) ..... 10

Cal. Civ. Code § 1798.81.5(d)(1)(A)(vi) ..... 9

Cal. Civ. Code § 1798.81.5(d)(1)(vi) ..... 5

Cal. Penal Code § 502(a) ..... 1, 6, 7

Cal. Penal Code § 502(b)(1) ..... 2

Cal. Penal Code § 502(b)(10) ..... 2, 6

Cal. Penal Code § 502(b)(11) ..... 2, 6

Cal. Penal Code § 502(c)(1) ..... 1

Cal. Penal Code § 502(c)(2) ..... *passim*

Cal. Penal Code § 502(c)(8) ..... 1

Cal. Penal Code § 502(d)(1) ..... 2

Cal. Penal Code § 502(d)(2)-(5) ..... 2

Cal. Penal Code § 502(e)(1) ..... 2, 5, 6

**OTHER AUTHORITIES**

STATE OF CAL. DEP'T OF JUST. (March 13, 2024), https://oag.ca.gov/privacy/ccpa ..... 10

## SUMMARY OF ARGUMENT

This copycat lawsuit is meritless. Plaintiff claims that Meta "accessed, collected, and used" video and audio files—which he *voluntarily* uploaded to Facebook and Messenger—in violation of the California Comprehensive Computer Data Access and Fraud Act ("CDAFA"), a criminal statute primarily targeting computer hacking. His allegations borrow heavily from the complaint in *Delgado v. Meta*, No. 23-cv-04181-SI (N.D. Cal. Aug. 16, 2023), which alleges on behalf of a putative class of Illinois residents that Meta collected "biometric information" in violation of the Illinois Biometric Information Privacy Act ("BIPA"), 740 ILCS 14/1 *et seq*. Plaintiff's attempt to recast the *Delgado* plaintiff's BIPA claim into a CDAFA claim fails as a matter of law.

*First*, Plaintiff did not suffer any cognizable "damage or loss," as required to sue under CDAFA. Cal. Penal Code § 502(e)(1). Only injuries stemming from concrete harms to computer systems or data—those typically associated with hacking—satisfy this requirement. *See, e.g.*, *Pratt v. Higgins*, 2023 WL 4564551, at *9 (N.D. Cal. July 17, 2023) (dismissing CDAFA claim based solely on privacy harm); *Heiting v. Taro Pharms. USA, Inc.*, 709 F. Supp. 3d 1007, 1021 (C.D. Cal. 2023) (economic injury). CDAFA's primary goal, after all, is "to prevent intentional intrusion onto someone else's computer"—i.e., "hacking." *In re BetterHelp, Inc. Data Disclosure Cases*, 2024 WL 3416511, at *5 (N.D. Cal. July 15, 2024). Plaintiff alleges nothing like that. Instead, he vaguely claims that Meta violated his "privacy interests" and "unjustly profited" from video and audio files that he himself uploaded to Meta's own services. Compl. ¶¶ 129-130.

*Second*, Plaintiff's own factual allegations, together with Meta's judicially noticeable Terms of Service, Privacy Policy, and Regional Privacy Notice, refute his conclusory assertion that Meta "[k]nowingly" took, copied, or used material he uploaded "without [his] permission." Cal. Penal Code § 502(c)(2). Meta did not "take[]" anything, *id.*, as Plaintiff voluntarily "input his voice into an audio function" on Facebook and Messenger. Compl. ¶ 110. And he gave Meta "'extensive' permissions" to use his uploads in all the ways he alleges. *Wendover Prods., LLC v. Paypal Inc.*, 2025 WL 3251667, at *4 (N.D. Cal. Nov. 21, 2025). Nothing about his broad consent to Meta's receipt and potential use of his voice and audio data was "vague[]." Compl. ¶ 103.

For either or both reasons, this lawsuit should be dismissed with prejudice.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. BACKGROUND

### A. Statutory Background

CDAFA is a criminal statute that combats "'computer crime' and hacking." *Heiting v. Taro Pharms. USA, Inc.*, 709 F. Supp. 3d 1007, 1020 (C.D. Cal. 2023); *accord Sunbelt Rentals, Inc. v. Victor*, 43 F. Supp. 3d 1026, 1032 (N.D. Cal. 2014). The California Legislature declared that CDAFA's purpose was to "expand the degree of protection afforded to individuals, businesses, and governmental agencies from tampering, interference, damage, and unauthorized access to lawfully created computer data and computer systems." Cal. Penal Code § 502(a).

As CDAFA's primary sponsor explained, the Legislature acted "in response to the actions of 'hackers' who intentionally, and without permission, … destroy[] existing stored data and built-in operating programs." Sen. Art Torres, S.B. 304 Fact Sheet, Cal. Leg. Intent Serv., at 77 (1989). The bill came on the heels of a hacking incident that "paralyzed more than 6,000 government, private and academic computers" and "affected sensitive governmental data at NASA, the National Security Agency and the Air Force's Strategic Air Command." *Id.* CDAFA is thus the "state-law analogue" of the Computer Fraud and Abuse Act ("CFAA"), *Ticketmaster L.L.C. v. Prestige Ent. W., Inc.*, 315 F. Supp. 3d 1147, 1174 (C.D. Cal. 2018)—a federal anti-hacking statute enacted around the same time, after a "series of highly publicized hackings captured the public's attention," *Van Buren v. United States*, 593 U.S. 374, 378 (2021).

Consistent with its anti-hacking focus, CDAFA criminalizes conduct that targets computer systems and data. For example, CDAFA prohibits "[k]nowingly access[ing] and without permission alter[ing], damag[ing], delet[ing], destroy[ing], or otherwise us[ing] any data, computer, computer system, or computer network" to "defraud, deceive, or extort" or to "wrongfully control or obtain money, property, or data." Cal. Penal Code § 502(c)(1). The statute also forbids "[k]nowingly introduc[ing] any computer contaminant"—such as a virus—"into any computer, computer system, or computer network." *Id.* § 502(c)(8). As relevant here, CDAFA prohibits "[k]nowingly access[ing]" and then "without permission tak[ing], cop[ying], or mak[ing] use of any data from a computer." *Id.* § 502(c)(2). Under CDAFA, "access" means to "gain entry

to, instruct, cause input to, cause output from, cause data processing with, or communicate with, the logical, arithmetical, or memory function resources of a computer, computer system, or computer network." *Id.* § 502(b)(1). To "knowingly" take, copy, or use data "without permission," meanwhile, requires defendants to "be aware both that they are [taking, copying, or] using data [] *and* that they are doing so without permission." *Tsering v. Meta Platforms, Inc.*, 2026 WL 89320, at *4 (N.D. Cal. Jan. 12, 2026); *accord People v. Hawkins*, 98 Cal. App. 4th 1428, 1438-39 (2002).

CDAFA violations carry potential criminal sanctions. Violations of Section 502(c)(2) and several other CDAFA subsections may result in a felony conviction "punishable by imprisonment" of up to three years and a $10,000 fine. Cal. Penal Code § 502(d)(1). The maximum criminal penalties for other violations hinge on whether the victim suffered an "injury" or was forced to make an "expenditure" of more than $5,000. *Id.* § 502(d)(2)-(5). CDAFA defines "injury" as "any alteration, deletion, damage, or destruction of a computer system" or "the denial of access to legitimate users of a computer system." *Id.* § 502(b)(10). And "victim expenditure" means "any expenditure reasonably and necessarily incurred" to "by the owner or lessee to verify that a computer system" or "data was or was not altered, deleted, damaged, or destroyed by the access." *Id.* § 502(b)(11).

CDAFA violations also may result in civil liability. CDAFA provides a private cause of action for hacking victims to seek "injunctive relief," "other equitable relief," and "compensatory damages" against violators. *Id.* § 502(e)(1). Tracking the criminal provision's definition of "victim expenditure," CDAFA provides that "[c]ompensatory damages shall include any expenditure reasonably and necessarily incurred by the owner or lessee to verify that a computer system, computer network, computer program, or data was or was not altered, damaged, or deleted by the access." *Id.* But CDAFA does not authorize civil penalties. *See id.* Critically, people may not sue under CDAFA unless they suffered "damage or loss by reason of a violation." *Id.*

### B. Factual Background

Meta is a technology company offering several widely used services, including Facebook, which is an online service that allows users to connect with friends, family, businesses, and their broader communities. Compl. ¶ 2. Meta also offers Messenger, a service that enables Facebook

users to communicate by sharing messages, photos, videos, and audio recordings, or by talking in real time. *Id.* ¶ 3. Both Facebook and Messenger let users record or transmit video or audio data, such as by "posting an audio file" or "posting a video that includes audio." *Id.* ¶ 52.

To access Facebook and Messenger, a user must consent to share certain data with Meta, including voice and audio data. More specifically, Meta publishes terms and policies disclosing the information Meta receives about its users and how it may be used. Compl. ¶ 74; *see* Exs. 3-9.[1] Users must agree to these policies in order to sign up for a Facebook account and use Meta's services. *See* Ex. 1 at 1.

Meta's Terms of Service explain the terms governing the use of Facebook and Messenger. *See* Ex. 3 at 1.[2] The Terms explain that by using Facebook and Messenger, the user gives Meta "[p]ermission to use content you create and share." *Id.* at 6. As relevant to Plaintiff's allegations, the Terms further disclose that Meta "use[s] your personal data to help determine which personalized ads to show you" and "for the purposes of developing and improving our services." *Id.* at 1, 3. In addition, the Terms repeatedly incorporate and direct users to Meta's Privacy Policy, which explains "how we collect and use your personal data to determine some of the ads you see" and to "improv[e] our services." *Id.* at 1, 3.

Meta's Privacy Policy, in turn, describes the information Meta receives from Facebook and Messenger users. Compl. ¶¶ 88-89; Ex. 6 at 1. Relevant here, the Privacy Policy discloses that Meta receives "information you provide" to Meta, including "audio" and other "[c]ontent you provide through" Facebook and Messenger's "voice-enabled features." Compl. ¶ 89; Ex. 6 at 2. It further states that Meta "use[s]" and "automatically process[es] the information [it has] collected and stored about you and others to identify you as a [Facebook or Messenger] user and tailor the

---

[1] All "Ex." references are to exhibits attached to the Blunschi Declaration. As explained in Meta's concurrently filed Request for Judicial Notice, each exhibit is incorporated by reference into the Complaint, subject to judicial notice, or both.

[2] References to the Meta terms and policies are to the versions in effect on January 20, 2023, the start of the proposed class period. Compl. ¶ 118. When Meta updates its policies, it notifies users of the changes and explains that if they continue to use Facebook or Messenger, they will be bound to the updated terms. *See* Ex. 3 at 8; Ex. 6 at 28. The relevant disclosures were materially the same in each version of the Terms, Privacy Policy, and Regional Privacy Notice that was in effect during the proposed class period. *See* Exs. 3-9.

ads you see" on third-party websites and apps, and to "provide and improve our Products," including "personalizing features, content and recommendations, such as … ads." Compl. ¶ 89; Ex. 6 at 9, 29, 35. The Privacy Policy also incorporates the United States Regional Privacy Notice ("Regional Privacy Notice"). Compl. ¶ 95; Ex. 6 at 28.

Meta's Regional Privacy Notice supplements the Privacy Policy for users who live in the United States. Compl. ¶ 95; Ex. 8 at 1. As relevant to Plaintiff's allegations in this case, the Regional Privacy Notice discloses that Meta may receive "voice recordings which *may* be used to identify you" and to "[p]rovid[e], personaliz[e], and improv[e] our products, including ads." Compl. ¶ 102 (emphasis added); *see* Ex. 8 at 1-2. The Regional Privacy Notice further discloses that Meta may receive information about "the content, communications, and other information you provide when you use" Facebook and Messenger, including "when you ... create or share content, and message or communicate with others." Ex. 8 at 2.

**C. Procedural History**

This is a copycat lawsuit modeled after the complaint in *Delgado v. Meta Platforms, Inc.*, No. 23-cv-04181-SI (N.D. Cal. Aug. 16, 2023). Plaintiff makes similar factual allegations, often reproducing extended sections of the *Delgado* pleading verbatim. *See Delgado*, Dkt. 1 ¶¶ 43-97; Ex. 12 ¶¶ 26-73 (redline comparison). The gist of the allegations is this: (1) a Meta user chose to "input his voice into an audio function on Facebook or Messenger"; (2) Meta supposedly used that voice and audio data to create a "voiceprint" of that user; and then (3) Meta allegedly "used Plaintiff's voiceprint and related biometric information for profit," without obtaining permission. Compl. ¶¶ 56, 71, 110, 112, 128-129; *see also Delgado*, Dkt. 1 ¶¶ 81, 96, 149, 151-152, 187. On that theory, both lawsuits seek to recover damages on behalf of a large class of Meta users.

The crucial difference between *Delgado* and this case is that *Delgado* involved claims under the Illinois Biometric Information Privacy Act ("BIPA"), 740 ILCS 14/1 *et seq.*, which codifies Illinoisans' right to "privacy in and control over their biometric identifiers and biometric information." *Rosenbach v. Six Flags Ent. Corp.*, 129 N.E.3d 1197, 1206 (Ill. 2019). Specifically, BIPA prohibits "collect[ing]," "captur[ing]," or "otherwise obtain[ing]" a person's "biometric identifier or biometric information" without first complying with a detailed set of statutorily

prescribed procedures—including heightened consent requirements. 740 ILCS 14/15(b). BIPA defines "[b]iometric identifier" to include "voiceprint[s]." 740 ILCS 14/10. And BIPA provides a private right of action to enforce its prohibitions. 740 ILCS 14/20.

California has a roughly analogous statute to BIPA, but it is not CDAFA. Rather, it is the California Consumer Privacy Act ("CCPA"), Cal. Civ. Code § 1798.100 *et seq.* Like BIPA, the CCPA protects "biometric data." Cal. Civ. Code § 1798.81.5(d)(1)(vi). But unlike BIPA, the CCPA assigns almost all enforcement authority to the state Attorney General, prohibiting private lawsuits except in cases involving a "security breach." *Id.* § 1798.150(a)(1).

With no hope for a viable CCPA claim, Plaintiff brings a CDAFA claim instead. Compl. ¶¶ 127-134. He alleges "privacy violations" based on the alleged collection of his "biometric information[,] such as [his] voiceprint[]." *Id.* ¶ 1. In particular, he alleges that Meta violated CDAFA by "knowingly accessing and without permission taking, copying, analyzing, and using [his] data," *id.* ¶ 128—i.e., "voiceprint[s] and related biometric information," *id.* ¶ 113. In so doing, Plaintiff continues, Meta "unjustly profited from [his] biometric information." *Id.* ¶ 129.

## II. LEGAL STANDARD

To survive dismissal, Plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In evaluating his complaint, this Court may "draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). And it may consider not just "the complaint," but also "materials incorporated into the complaint by reference, and matters of which the court may take judicial notice." *Trader Joe's Co. v. Trader Joe's United*, 150 F.4th 1040, 1048 (9th Cir. 2025).

## III. ARGUMENT

Plaintiff's attempt to manufacture a CDAFA claim based on allegations concerning data that he himself transmitted to Meta fails for two independent reasons. *First*, his generalized claims of privacy and economic injury are not the kind of concrete harms to computer systems or data required to plead a cognizable "damage or loss" under CDAFA. Cal. Penal Code § 502(e)(1). *Second*, Plaintiff voluntarily uploaded voice and audio files to Meta's services and gave Meta broad authorization to use them—including for the identification and ad-targeting purposes he

alleges—foreclosing any plausible inference that Meta "[k]nowingly" acted "without permission." *Id.* § 502(c)(2). Neither deficiency can be cured, warranting dismissal with prejudice.

### A. Plaintiff Does Not Allege Any Cognizable "Damage Or Loss"

Only an individual who has "suffer[ed] damage or loss by reason of a [statutory] violation" may bring a private CDAFA suit against the alleged violator. Cal. Penal Code § 502(e)(1). Plaintiff claims to satisfy CDAFA's "damage or loss" requirement merely because Meta allegedly "violat[ed] [his] privacy interests," Compl. ¶ 130, and supposedly "unjustly profited" from his "biometric information," *id.* ¶ 129. Plaintiff is wrong.

#### 1. CDAFA Requires Concrete Harms To Computer Systems Or Data

As numerous courts have held, CDAFA's "damage or loss" requirement extends only to concrete harms to computers systems or data that are typically associated with hacking, such as costs related to "fixing a computer, lost revenue, or other consequential damages incurred due to an interruption of computer services." *Pratt v. Higgins*, 2023 WL 4564551, at *9 (N.D. Cal. July 17, 2023); *see also, e.g.*, *Heiting*, 709 F. Supp. 3d at 1021 (dismissing CDAFA claim for lack of "damage to the computer system"); *Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d 1064, 1081-82 (N.D. Cal. 2023) (similar). This widely adopted construction is correct—and resolves this case.

As "a penal statute," CDAFA must "be strictly construed." *Claridge v. RockYou, Inc.*, 785 F. Supp. 2d 855, 863 (N.D. Cal. 2011). The statute unmistakably targets "hacking," *id.*—i.e., "tampering, interference, damage, and unauthorized access" to "computer systems" and "data," Cal. Penal Code § 502(a)—and the kinds of harms to computer systems and data that typically result. CDAFA defines "injury" as the "alteration, deletion, damage, or destruction of a computer system" or "data," as well as "the denial of access to legitimate users of a computer system." *Id.* § 502(b)(10). And CDAFA makes "compensatory damages" available to victims for expenditures incurred "to verify that a computer system, computer network, computer program, or data was or was not altered, damaged, or deleted." *Id.* § 502(e)(1); *see also id.* § 502(b)(11) (similar). That provision clarifying the kinds of compensatory damages available to civil plaintiffs would be totally "superfluous" if (as Plaintiff argues) CDAFA were so capacious as to reach *any* conceivable kind of alleged harm. *Doe v. Eating Recovery Ctr. LLC*, 806 F. Supp. 3d 1109, 1118 (N.D. Cal.

2025) (rejecting "broad[]" reading of California criminal prohibition in data privacy case). CDAFA's "damage or loss" requirement is accordingly far narrower: To be cognizable, an alleged injury must involve concrete harm to computer systems or data of the sort typically caused by computer hacking. That stands to reason, as CDAFA was enacted on the heels of high-profile hacking incidents, with the express goal of combating the "tampering, interference, damage, and unauthorized access" to "computer data and computer systems." Cal. Penal Code § 502(a).

CDAFA's federal counterpart—the CFAA—confirms this. Like CDAFA, the CFAA requires a civil plaintiff to have suffered "damage or loss by reason of a [statutory] violation." 18 U.S.C. § 1030(g). The Supreme Court has authoritatively construed the CFAA's materially identical "damage [or] loss" requirement to demand either an "impairment to the integrity or availability of data, a program, a system, or information" (i.e., "damage"), or "costs caused by harm to computer data, programs, systems, or information services" (i.e., "loss"). *Van Buren*, 593 U.S. at 391 (citing 18 U.S.C. §§ 1030(e)(8), (11)). The CFAA's "focus on technological harms," the Supreme Court explained, "makes sense in a scheme aimed at preventing the typical consequences of hacking." *Van Buren*, 593 U.S. at 392. So too with CDAFA, as courts routinely hold. *See, e.g.*, *Cottle v. Plaid Inc.*, 536 F. Supp. 3d 461, 485-88 (N.D. Cal. 2021) (CDAFA's "damage or loss" requirement mirrors the CFAA's); *Bui-Ford v. Tesla, Inc.*, 2024 WL 694485, at *6 (N.D. Cal. Feb. 20, 2024); *Wesch v. Yodlee, Inc.*, 2021 WL 1399291, at *6-7 (N.D. Cal. Feb. 16, 2021); *Nowak v. Xapo, Inc.*, 2020 WL 6822888, at *5 (N.D. Cal. Nov. 20, 2020).

Plaintiff does not allege—let alone plausibly—that he suffered the kind of concrete harms to computer systems or data that CDAFA requires. He alleges that Meta used voice and audio files that *he himself* uploaded to Meta's *own services*. As a matter of law, Plaintiff's alleged "loss of the right to control [his] own data, the loss of the value of [his] data, and the loss of the right to protection of the data" from that sequence of events do not qualify as "'damage or loss' within the meaning of the CDAFA." *Cottle*, 536 F. Supp. 3d at 488 (dismissing CDAFA claim); *see, e.g.*, Compl. ¶ 130 (accusing Meta of "violating Plaintiff's privacy interests"), ¶ 108 (similar). Merely suffering an "alleged privacy invasion[]" is not a cognizable injury under CDAFA. *Heiting*, 709 F. Supp. 3d at 1020-21; *accord Doe*, 690 F. Supp. 3d at 1082; *Pratt*, 2023 WL 4564551, at *9.

Plaintiff's allegation that he suffered an "economic injury" from Meta's having supposedly "profited from [his purported] biometric information" does not change the analysis. Compl. ¶ 129. On its face, this injury theory looks nothing like the kinds of harm to computer systems or data typically associated with hacking—and fails for that reason alone. The theory also crumbles on its own terms. Even assuming that Plaintiff's purported biometric "data is valuable in the abstract" and that Meta "might have made money from it" (all of which Meta disputes), that "does not mean that Plaintiff[]" actually "lost money" as a result. *Hazel v. Prudential Fin., Inc.*, 2023 WL 3933073, at *6 (N.D. Cal. June 9, 2023) (Breyer, J.) (dismissing UCL claim). Indeed, as Judge Chhabria explained, an allegation that Meta "may have gained money" through alleged "use of the plaintiffs' information" is "different from saying the plaintiffs lost money" themselves. *In re Facebook, Inc., Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d 767, 804 (N.D. Cal. 2019) (also dismissing UCL claim); *accord In re Google Assistant Priv. Litig.*, 546 F. Supp. 3d 945, 972 (N.D. Cal. 2021); *Griffith v. TikTok, Inc.*, 697 F. Supp. 3d 963, 978 (C.D. Cal. 2023). Simply put, any "profit" Meta supposedly made from Plaintiff's voice and audio "data" cannot "demonstrate a loss" to Plaintiff under CDAFA. *Shah v. Cap. One Fin. Corp.*, 768 F. Supp. 3d 1033, 1048 (N.D. Cal. 2025) (dismissing CDAFA claim premised on unjust enrichment theory of loss).

**2. Plaintiff's Contrary Interpretation Is Untenable**

Plaintiff's attempt to establish a cognizable "damage or loss" under CDAFA violates the statute's text and defies an overwhelming judicial consensus interpreting it. That is reason enough to reject Plaintiff's reliance on purported privacy and economic injuries. And there are other reasons to reject his boundless interpretation of CDAFA's "damage or loss" requirement as well.

For starters, Plaintiff's position relies on "cases holding that tracking and collection of data is an injury sufficient to confer Article III standing," as distinct from a statutory injury requirement like CDAFA's. *Hazel*, 2023 WL 3933073, at *6 (Breyer, J.). On top of that, the decisions arguably embracing Plaintiff's position—such as *Brown v. Google LLC*, 685 F. Supp. 3d 909, 940 (N.D. Cal. 2023), and *Rodriguez v. Google LLC*, 772 F. Supp. 3d 1093, 1109 (N.D. Cal. 2025)—rest on a misreading of *In re Facebook, Inc. Internet Tracking Litigation*, 956 F.3d 589 (9th Cir. 2020). In *In re Facebook*, the Ninth Circuit held that the plaintiffs had sufficiently alleged Article III

standing because "California law recognizes a right to disgorgement of profits resulting from unjust enrichment, even where an individual has *not* suffered a corresponding loss." 956 F.3d at 599 (emphasis added). But as the Ninth Circuit itself made clear, CDAFA "requires damages" over and above the constitutional minimum. *Id.* at 599 n.4. *In re Facebook* thus says nothing about "the 'loss or damage' requirement of the statute." *Doe*, 690 F. Supp. 3d at 1082 n.5. And what the case *does* say about Article III standing "has been superseded" by the Supreme Court's intervening decision in *TransUnion LLC v. Ramirez*, 594 U.S. 413, 427 (2021), "making it even more of a stretch to rely on [*In re Facebook*] as an implicit statement about statutory standing under California law," *McClung v. AddShopper, Inc.*, 2024 WL 189006, at *2 n.2 (N.D. Cal. Jan. 17, 2024); *see also Popa v. Microsoft Corp.*, 153 F.4th 784, 794 (9th Cir. 2025) (declining, in light of *TransUnion*, to follow *In re Facebook*'s "broad statements" about Article III standing).

More fundamentally, broadening CDAFA's "damage or loss" requirement to encompass Plaintiff's theories would make a hash of the legislative scheme in this area. As explained, the California Legislature enacted the CCPA to "protect consumers' privacy rights by providing them meaningful control over how their personal information is collected, used, and disclosed." *Cal. Priv. Prot. Agency v. Superior Ct.*, 99 Cal. App. 5th 705, 712 (2024); *see supra* at 1-2. To advance this purpose, the CCPA requires businesses to "inform consumers" of the "categories of personal information to be collected," "the purposes for which [it is] collected or used," and "whether [it] is sold or shared" with third parties. Cal. Civ. Code § 1798.100(a)(1). This protection explicitly extends to "biometric data," which Plaintiff (baselessly) claims is at issue in this case. *Id.* § 1798.81.5(d)(1)(A)(vi); *see id.* (defining "personal information" to include "[u]nique biometric data generated from measurements or technical analysis of human body characteristics, such as a fingerprint, retina, or iris image, used to authenticate a specific individual").

The CCPA "shows that the Legislature knows how to make clear that it is regulating online privacy and that it does so by carefully balancing concerns unique to online commerce." *Apple Inc. v. Superior Ct.*, 56 Cal. 4th 128, 147 (2013). In enacting the CCPA, the Legislature deliberately calibrated data privacy enforcement mechanisms, deciding to assign almost all enforcement authority to the California Attorney General and permitting private lawsuits *only* in cases involving

a "[s]ecurity [b]reach[]." Cal. Civ. Code § 1798.150. The CCPA thus reflects the Legislature's decision to foreclose private data privacy suits, except when a business's failure to maintain reasonable data security measures causes a plaintiff's "nonencrypted and nonredacted" data to be "subject to an unauthorized access and exfiltration, theft, or disclosure." *Id.* § 1798.150(a)(1); *see Frequently Asked Questions, California Consumer Privacy Act (CCPA)*, STATE OF CAL. DEP'T OF JUST. (March 13, 2024), https://oag.ca.gov/privacy/ccpa ("You cannot sue businesses for most CCPA violations. You can only sue a business under the CCPA if there is a data breach."). That legislative choice forecloses any CCPA suit based on the allegations here.

With the courthouse door closed to a CCPA claim, Plaintiff tries to use CDAFA to climb in through the window. But the CCPA forbids that, too. It specifically provides that "[n]othing" in the statute "shall be interpreted to serve as the basis for a private right of action under any other law." Cal. Civ. Code § 1798.150(c). This Court should not let Plaintiff concoct through creative pleading a cause of action under CDAFA that the Legislature declined to create under the statute (the CCPA) expressly designed to address biometric privacy claims. *Cf. Silver v. Stripe Inc.*, 2021 WL 3191752, at *6-7 (N.D. Cal. July 28, 2021) (holding that an alleged CCPA violation cannot serve as the predicate for a UCL claim). Plaintiff concededly did not suffer any concrete "damage or loss" to a computer system or data, foreclosing his CDAFA claim as a matter of law.

**B. Meta Did Not "Knowingly" Act "Without Permission"**

Plaintiff's CDAFA claim fails for another reason: even accepting his allegations on their face, he does not and cannot plausibly allege that Meta took, copied, or used his voice and audio data "without permission," let alone that Meta did so "[k]nowingly." Cal. Penal Code § 502(c)(2).

**1. Plaintiff Voluntarily Gave Meta His Data And Consented To Its Use**

Plaintiff alleges that he used Facebook and Messenger throughout the proposed class period. Compl. ¶ 110. He admits that, in so doing, he "input his voice into an audio function" on Facebook and Messenger, voluntarily uploading voice and audio data to those services. *Id.* Meta thus did not "take[]" anything, let alone "without permission." Cal. Penal Code § 502(c)(2).

Plaintiff also indisputably consented to the ways in which he alleges Meta "ma[de] use" of his voice and audio data. *Id.* Like all Facebook users, Plaintiff agreed to Meta's Terms of Service

and Privacy Policy (which incorporates the Regional Privacy Notice) by creating a Facebook account and continuing to use Meta's services. *See* Ex. 1 at 1; Ex. 6 at 28 (incorporating Regional Privacy Notice); *see also Meta Platforms, Inc. v. Nguyen*, 2023 WL 8686924, at *2 (N.D. Cal. Nov. 21, 2023) ("All Facebook users must agree to [Meta's] Terms of Service … and other rules that govern access to, and use of Facebook.").[3] Over and over again, these documents make clear that Plaintiff consented to the purported uses of his data (including identification and ad-targeting) alleged in his complaint.

Specifically, as Plaintiff acknowledges, the Regional Privacy Notice plainly states that Meta receives "voice recordings which *may* be used to identify you," including potentially for the purpose of "[p]roviding, personalizing, and improving our products, including ads." Compl. ¶ 102 (emphasis added); *see* Ex. 8 at 1-2.[4] The Privacy Policy discloses that Meta collects information that users provide to Meta, including "[c]ontent you create, like … audio" and "[c]ontent you provide through … our voice-enabled features." Compl. ¶ 89; *see* Ex. 6 at 2. The Privacy Policy further explains that Meta uses such user-provided data to "[i]dentify you as a [Facebook or

---

[3] Each version of the Privacy Policy throughout the proposed class period contained a link to the "Regional Privacy Notice." *See* Ex. 6 at 28; Ex. 7 at 1. Plaintiff's conclusory allegation to the contrary—i.e., that "[p]rior to May 23, 2025," clicking on a hyperlink entitled "Regional Privacy Notice" actually "led to a 'California Privacy Notice'" instead of the Regional Privacy Notice, Compl. ¶ 94—need not and should not be credited. It contradicts what those versions of the Privacy Policy actually say. *See* Ex. 6 at 28 (as of January 1, 2023, the Privacy Policy's hyperlinked text read "United States Regional Privacy Notice"); Ex. 11 at 1 (as of January 1, 2023, clicking the Privacy Policy's "United States Regional Privacy Notice" text redirected the user to the Regional Privacy Notice). And it quite clearly is the product of copying and pasting from the *Delgado* complaint and then hastily updating the relevant date and text. *See* Ex. 12 at 51-52 (redline comparison); *see also Delgado*, Dkt. 1 ¶ 130 (August 2023 allegation that "clicking on the link" led "to a 'California Privacy Notice'" in effect before "January 1, 2023"); Ex. 5 at 57 (before January 1, 2023, the Privacy Policy's hyperlinked text read "California Privacy Notice"); Ex. 10 at 1 (before January 1, 2023, clicking on the Privacy Policy's "California Privacy Notice" text led to a California Privacy Notice). Because Plaintiff's allegation is "contradict[ed]" by "judicially noticeable facts," *Temple of 1001 Buddhas v. City of Fremont*, 588 F. Supp. 3d 1010, 1024 (N.D. Cal. 2022) (Breyer, J.), and was plainly "taken directly from [another] complaint with no additional investigation," *In re Connetics Corp. Secs. Litig.*, 542 F. Supp. 2d 996, 1004-06 (N.D. Cal. 2008), the Court can and should reject it.

[4] This language does not, as Plaintiff intimates, disclose that Meta *actually* creates voiceprints using voice recordings provided by users. *Contra* Compl. ¶ 102. Rather, it satisfies Meta's disclosure obligation under the CCPA: Because the statute requires Meta to disclose that it collects voice recordings that—like any voice recording—*could* be turned into voiceprints, Meta makes exactly that disclosure. Ex. 8 at 2; *see* Cal. Civ. Code §§ 1798.130(c), 1798.140(c), 1798.140(ae)(2)(A) (requiring disclosure of the collection of "voice recordings[] from which an identifier template, such as a … voiceprint, *can* be extracted" (emphasis added)).

Messenger] user" and to "improve our Products," including "personalizing features, content and recommendations, such as … ads." Ex. 6 at 9, 35. And the Terms similarly state that Meta "use[s] your personal data to help determine which personalized ads to show you" and "for the purposes of developing and improving our services." Ex. 3 at 1, 3.

Despite having voluntarily uploaded voice and audio data to Meta's services, Plaintiff faults Meta for allegedly using that information to "improve its products"—including certain "identification methods"—as well as, he claims, "to identify users so that it can send them customized, targeted content, including targeted advertisements." Compl. ¶ 72; *see id.* ¶ 110. But as just explained, Plaintiff consented to precisely that kind of alleged conduct. Having done that and then chosen to upload his voice and audio data on Meta's services, Plaintiff cannot defensibly assert that any of the data uses he alleges in his Complaint were "without permission." Cal. Penal Code § 502(c)(2); *see, e.g.*, *Wendover Prods., LLC v. Paypal Inc.*, 2025 WL 3251667, at *1 (N.D. Cal. Nov. 21, 2025) (dismissing CDAFA claim where plaintiff granted defendant "'extensive' permissions" when downloading browser extension).

Plaintiff attempts to circumvent Meta's Terms of Service, Privacy Policy, and Regional Privacy Notice by alleging that they were somehow inadequate to obtain his consent because they did not specifically mention the term "voiceprints." Compl. ¶¶ 7, 86-87, 90-91, 105. That argument fails. Because CDAFA does not "impose[] any duty to disclose *how* permissions will be exercised" after they are obtained, the statute's "without permission" element does not turn on fine-grained distinctions about the nature of the particular use at issue. *Wendover*, 2025 WL 3251667, at *5. What matters instead is whether the defendant was, in broad strokes, "authorized in the first instance to … use the information" at issue. *Oracle USA, Inc. v. Rimini St., Inc.*, 879 F.3d 948, 962 (9th Cir. 2018), *rev'd on other grounds*, 586 U.S. 334 (2019).

Here, Plaintiff granted Meta broad permissions to use his voice and audio data, including in the ways he claims Meta did here—namely, to improve Meta's products, to identify him, and to help target advertising. Compl. ¶¶ 89, 102; *see* Ex. 3 at 1, 3; Ex. 6 at 2; Ex. 8 at 2. Even if Plaintiff were right about the specific *manner* in which Meta allegedly "use[d] the very same permissions it was granted"—i.e., purportedly creating voiceprints—it would be beside the point under

CDAFA. *Wendover*, 2025 WL 3251667, at *4-5 (dismissing CDAFA claim where plaintiff gave defendant a "broad suite of permissions"); *see also PartyLite Gifts, Inc. v. Morris*, 2006 WL 8434715, at *4 (C.D. Cal. Feb. 21, 2006) (holding that "general" contract provisions "encompass[ing] a wide variety of specific situations" need not "expressly delineate every conceivable situation" to be effective). That alone is dispositive. *See Wendover*, 2025 WL 3251667, at *4-5.

At any rate, Plaintiff fails to plausibly allege that Meta even created or collected his voiceprints. A "voiceprint" is "not the same as a simple recording of a voice." *Carpenter v. McDonald's Corp.*, 580 F. Supp. 3d 512, 515 (N.D. Ill. 2022); *accord McGoveran v. Amazon Web Servs., Inc.*, 2023 WL 2683553, at *10 (D. Del. Mar. 29, 2023) (Bibas, J.) ("voice audio alone" is not a voiceprint). Plaintiff's bare allegation that he gave Meta "audio" and "recordings" of his voice, Compl. ¶ 3, is thus insufficient to plausibly allege the creation and collection of voiceprints. Nor does his allegation that Meta has obtained patents on certain voiceprint technologies solve the problem. *See id.* ¶¶ 35-50. Mere possession of patents does not suggest that they "could have been implemented," much less that they in fact "ha[ve] been implemented" in a particular way. *Casey v. Toyota Motor Eng'g & Mfg. N. Am., Inc.*, 770 F.3d 322, 334 (5th Cir. 2014).

Similarly, that Plaintiff consented to the creation of voiceprints does not suggest that voiceprints were actually created. As explained, Meta's Regional Privacy Notice makes a CCPA-mandated disclosure that Meta receives "voice recordings which *may* be used to identify you," Compl. ¶ 102 (emphasis omitted in part); *see supra* at 11 n.4. This "privacy policy alone cannot [even] give rise to a reasonable inference" that Meta in fact did something that the policy states only that Meta "may" do. *Gamez v. VF Corp.*, 2018 WL 6333560, at *3 (C.D. Cal. Nov. 21, 2018); *accord Bridges v. Blackstone Grp., Inc.*, 2022 WL 2643968, at *5 (S.D. Ill. July 7, 2022). Plaintiffs' conclusory allegation that Meta created voiceprints without permission thus fails on every level.

**2. Plaintiff Cannot Establish That Meta "Knowingly" Lacked Permission**

Even if Plaintiff had plausibly alleged that Meta received and used his voice and audio data without permission, he necessarily falls short of alleging that Meta *knew* it lacked such permission.

And given CDAFA's potential penal sanctions, Plaintiff cannot show that Meta acted with the requisite mens rea, given his voluntary decision to upload voice and audio data to Meta's services and the plain text of Meta's Terms of Service, Privacy Policy, and Regional Privacy Notice.

Section 502(c)(2)'s "use of the word 'knowingly'" requires a significant "level of culpability." *Kirby as Co-Trs. of William Warner Kirby 2014 Tr. v. AT&T Corp.*, 2022 WL 17184565, at *5 (S.D. Cal. Nov. 23, 2022). The term "modifies *each* element of the alleged violation" and "requires that an individual be aware both that they are [taking, copying, or] using data … *and* that they are doing so without permission." *Tsering*, 2026 WL 89320, at *4. By demanding a "culpable mental state regarding 'each of the statutory elements,'" Section 502(c)(2)'s mens rea requirement "separate[s] those who understand the wrongful nature of their act from those who do not." *Rehaif v. United States*, 588 U.S. 225, 229, 231-32 (2019) (interpreting 18 U.S.C. 922(g)); *see also United States v. Collazo*, 984 F.3d 1308, 1324 (9th Cir. 2021) (similar). Here, the requirement precludes the "untenable situation" of "criminal penalties" being "meted out on the basis of [merely] vague or ambiguous terms of use." *In re iPhone Application Litig.*, 2011 WL 4403963, at *12 (N.D. Cal. Sep. 20, 2011) (dismissing civil CDAFA claim).

Plaintiff does not and cannot adequately allege that Meta "[k]nowingly" took and used his voice and audio data "without permission." Cal. Penal Code § 502(c)(2). To repeat: Plaintiff himself uploaded his voice and audio data to Meta's services—and like all Facebook and Messenger users, he gave Meta broad permission to use that data, including for identification and advertising purposes. *See supra* at 10-13. While Plaintiff acknowledges that Meta offered users the option to opt out from any such use, Compl. ¶ 106, he does not allege that he in fact opted out or otherwise put Meta "on notice" that this permission "had been revoked," *Chegg, Inc. v. Doe*, 2023 WL 4315540, at *3 (N.D. Cal. July 3, 2023) (Breyer, J.) (denying preliminary injunction under CDAFA). And even accepting his unfounded and undeveloped premise that Meta's Terms of Service, Privacy Policy, and Regional Privacy Notice were somehow "vague[]," Compl. ¶ 103, there is no plausible world in which Meta can be said to have *known* that it lacked permission to undertake any action that Plaintiff alleges. *See, e.g.*, *Tsering*, 2026 WL 89320, at *4 (dismissing CDAFA claim where plaintiffs did not plausibly allege Meta knew it lacked permission to receive

and use data at issue, where the data's receipt and potential uses were disclosed in applicable privacy policies).[5] That, too, independently warrants dismissal.

### C. Dismissal With Prejudice Is Warranted

This case should be dismissed with prejudice because the fundamental defects in Plaintiff's CDAFA claim "could not be cured by the allegation of other facts." *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990). No additional facts can overcome Plaintiff's complete lack of any cognizable "loss or damage" or the clear authorization he gave for all of the conduct that he alleges happened here. *See Gutierrez v. Converse Inc.*, 2023 WL 8939221, at *5 (C.D. Cal. Oct. 27, 2023) (dismissing CDAFA claim with prejudice for failure to plead loss or damage); *In re Facebook Priv. Litig.*, 791 F. Supp. 2d 705, 716 (N.D. Cal. 2011) (same, where Plaintiff could not satisfy "without permission" element). Thus, any attempted amendment would be futile. *See Guillon v. AMCO Ins. Co.*, 2021 WL 254264, at *5 (N.D. Cal. Jan. 26, 2021) (Breyer, J.) (dismissing initial complaint with prejudice), *aff'd*, 2021 WL 6102174 (9th Cir. Dec. 22, 2021).

## IV. CONCLUSION

Meta respectfully requests that the Court dismiss this case with prejudice.

Dated: April 13, 2026

Respectfully submitted,

LATHAM & WATKINS LLP

By: /s/ *Melanie M. Blunschi*
Melanie M. Blunschi (Bar No. 234264)
*melanie.blunschi@lw.com*
Nicholas Rosellini (Bar No. 316080)
*nick.rosellini@lw.com*
Alisha Nguyen (Bar No. 344450)
*alisha.nguyen@lw.com*
Carmen Crossley (Bar No. 344856)
*carmen.crossley@lw.com*

[5] Indeed, Plaintiff scarcely tries to allege otherwise. Other than a single allegation "parroting the language" of Section 502(c)(2)'s knowledge requirement, Compl. ¶ 128, he alleges no facts at all as to Meta's mental state. That is patently insufficient. *See Gonzalez v. Uber Techs., Inc.*, 305 F. Supp. 3d 1078, 1090 (N.D. Cal. 2018) (dismissing CDAFA claim that merely "parrot[ed] the language" of the statute); *Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110, 132 (N.D. Cal. 2020) (similar); *Satmodo, LLC v. Whenever Commc'ns, LLC*, 2017 WL 1365839, at *7 (S.D. Cal. Apr. 14, 2017) (similar); *Sunbelt Rentals*, 43 F. Supp. 3d at 1033 (similar).

505 Montgomery St., Suite 2000
San Francisco, CA 94111
Telephone: +1.415.391.0600

Gary Feinerman (*pro hac vice*)
*gary.feinerman@lw.com*
Kathryn K. George (*pro hac vice*)
*katie.george@lw.com*
330 N. Wabash Ave., Suite 2800
Chicago, IL 60611
Telephone: +1.312.876.7700

*Attorneys for Defendant Meta Platforms, Inc.*