**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: ltfisher@bursor.com

*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

NICHOLAS ROBINSON, individually and on behalf of all others similarly situated,

Plaintiff,

v.

META PLATFORMS, INC.,

Defendant.

Case No. 3:26-cv-01616-CRB

**PLAINTIFF'S OPPOSITION TO DEFENDANT META PLATFORM INC.'S MOTION TO DISMISS CLASS ACTION COMPLAINT**

Hearing: July 17, 2026
Time: 10:00 a.m.
Location: Courtroom 6—17th Floor
Judge: Hon. Charles R. Breyer

# TABLE OF CONTENTS

PAGE(S)

SUMMARY OF ARGUMENT ........ 1

I. BACKGROUND ........ 2

A. Defendant's Alleged Collection and Use of Voiceprints ........ 2

B. Defendant's User-Facing Disclosures ........ 3

C. Plaintiff's Experience ........ 4

II. LEGAL STANDARD ........ 4

III. ARGUMENT ........ 4

A. Plaintiff Adequately Alleges "Damage or Loss" Under Section 502(e)(1). ........ 5

1. Disgorgement of Defendant's Unjust Profits Constitutes Cognizable "Damage or Loss." ........ 5

2. The Text and Structure of CDAFA Confirm That "Damage or Loss" Is Not Limited to Hacking Harms. ........ 6

3. The CCPA Does Not Displace Plaintiff's CDAFA Claim. ........ 8

B. Plaintiff Plausibly Alleges That Defendant Acted "Knowingly" and "Without Permission." ........ 9

1. Plaintiff's Use of Messenger to Communicate with an Acquaintance Is Not Permission to Extract Biometric Voiceprints. ........ 9

2. Defendant's Vague, Fragmented Disclosures Do Not Establish Authorization as a Matter of Law. ........ 10

3. The Complaint Plausibly Alleges That Defendant Created and Used Voiceprints. ........ 11

4. Knowledge Is a Fact Question Inappropriate for Resolution on a Motion to Dismiss. ........ 12

IV. DISMISSAL WITH PREJUDICE IS UNWARRANTED. ........ 13

CONCLUSION ........ 13

# TABLE OF AUTHORITIES


**PAGE(S)**

**CASES**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .... 4, 13

*Brown v. Google LLC*,
525 F. Supp. 3d 1049 (N.D. Cal. 2021) .... 9

*Brown v. Google LLC*,
685 F. Supp. 3d 909 (N.D. Cal. 2023) .... 1, 5, 8, 9

*Bui-Ford v. Tesla, Inc.*,
2024 WL 694485 (N.D. Cal. Feb. 20, 2024) .... 8

*Carpenter v. McDonald's Corp.*,
580 F. Supp. 3d 512 (N.D. Ill. 2022) .... 11

*Chegg, Inc. v. Doe*,
2023 WL 4315540 (N.D. Cal. July 3, 2023) .... 12

*Cottle v. Plaid Inc.*,
536 F. Supp. 3d 461 (N.D. Cal. 2021) .... 6, 8

*Delgado v. Meta Platforms, Inc.*,
718 F. Supp. 3d 1146 (N.D. Cal. 2024) .... 2, 11, 12

*Doe v. Meta Platforms, Inc.*,
690 F. Supp. 3d 1064 (N.D. Cal. 2023) .... 6

*Dougherty v. City of Covina*,
654 F.3d 892 (9th Cir. 2011) .... 4

*Eminence Capital, LLC v. Aspeon, Inc.*,
316 F.3d 1048 (9th Cir. 2003) .... 13

*Hazel v. Prudential Financial, Inc.*,
2023 WL 3933073 (N.D. Cal. June 9, 2023) .... 6

*Heiting v. Taro Pharms. USA, Inc.*,
709 F. Supp. 3d 1007 (C.D. Cal. 2023) .... 6

*In re Facebook, Inc. Internet Tracking Litigation*,
956 F.3d 589 (9th Cir. 2020) .... 1, 5, 6

*Marx v. Gen. Revenue Corp.*,
568 U.S. 371 (2013) .... 7

*McGoveran v. Amazon Web Services, Inc.*,
2023 WL 2683553 (D. Del. Mar. 29, 2023) .......... 11

*Nowak v. Xapo, Inc.*,
2020 WL 6822888 (N.D. Cal. Nov. 20, 2020) .......... 8

*Oracle USA, Inc. v. Rimini St., Inc.*,
879 F.3d 948 (9th Cir. 2018) .......... 11

*Popa v. Microsoft Corp.*,
153 F.4th 784 (9th Cir. 2025) .......... 6

*Pratt v. Higgins*,
2023 WL 4564551 (N.D. Cal. July 17, 2023) .......... 6

*Rehaif v. United States*,
588 U.S. 225 (2019) .......... 13

*Rodriguez v. Google LLC*,
772 F. Supp. 3d 1093 (N.D. Cal. 2025) .......... 1, 5, 8, 9

*Russello v. United States*,
464 U.S. 16 (1983) .......... 8

*Smith v. Rack Room Shoes, Inc.*,
2025 WL 2210002 (N.D. Cal. Aug. 4, 2025) .......... passim

*Tsering v. Meta Platforms, Inc.*,
2026 WL 89320 (N.D. Cal. Jan. 12, 2026) .......... 12

*United States v. Christensen*,
828 F.3d 763 (9th Cir. 2015) .......... 10

*United States v. Herrera*,
974 F.3d 1040 (9th Cir. 2020) .......... 7

*Van Buren v. United States*,
593 U.S. 374 (2021) .......... 8

*Wendover Productions, LLC v. PayPal Inc.*,
2025 WL 3251667 (N.D. Cal. Nov. 21, 2025) .......... 10, 11

*Wesch v. Yodlee, Inc.*,
2021 WL 1399291 (N.D. Cal. Feb. 16, 2021) .......... 8

**STATUTES**

18 U.S.C. § 1030(e) .......... 1, 8

Cal. Bus. & Prof. Code § 17204 .......... 6

Cal. Civ. Code § 1798.150(c) .......... 9

Cal. Pen. Code § 4 .......... 1, 5

Cal. Pen. Code § 502 .......... 1

Cal. Pen. Code § 502(a) .......... 1, 7

Cal. Pen. Code § 502(b) .......... 7, 8

Cal. Pen. Code § 502(c) .......... 6, 7, 10

Cal. Pen. Code § 502(d) (2)–(5) .......... 7

Cal. Pen. Code § 502(e)(1) .......... 1, 5, 7

**RULES**

Fed. R. Civ. P. 9(b) .......... 2, 13

Fed. R. Civ. P. 12(b)(6) .......... 4

**SUMMARY OF ARGUMENT**

Defendant's motion rests on two flawed premises, each foreclosed by recent authority in this District. First, Defendant argues that Plaintiff has not alleged any cognizable "damage or loss" under the California Comprehensive Computer Data Access and Fraud Act ("CDAFA"). Cal. Penal Code § 502(e)(1). That argument was rejected in *Smith v. Rack Room Shoes, Inc.*, 2025 WL 2210002 (N.D. Cal. Aug. 4, 2025), which held that disgorgement of a defendant's unjustly earned profits satisfies CDAFA's "damage or loss" requirement, applying the Ninth Circuit's binding decision in *In re Facebook, Inc. Internet Tracking Litigation*, 956 F.3d 589 (9th Cir. 2020). Two other recent decisions in this District have reached the same conclusion. *See Rodriguez v. Google LLC*, 772 F. Supp. 3d 1093 (N.D. Cal. 2025); *Brown v. Google LLC*, 685 F. Supp. 3d 909 (N.D. Cal. 2023). Defendant's textual arguments, including its insistence that CDAFA be "strictly construed" and read in lockstep with the Computer Fraud and Abuse Act ("CFAA"), conflict with the Penal Code's express interpretive rule, the structure of Section 502, and the deliberate textual differences between CDAFA and the federal statute Defendant invokes. *See* Cal. Penal Code § 4; Cal. Penal Code § 502(a); 18 U.S.C. § 1030(e)(8), (11). Additionally, the California Consumer Privacy Act ("CCPA") does not displace CDAFA. By its own terms, Section 1798.150(c) does not preclude independent CDAFA claims premised on independent statutory elements.

Second, Defendant argues that Plaintiff's act of uploading audio to communicate constituted blanket consent to silent biometric voiceprint extraction. That argument cannot be squared with the Complaint, which alleges that Defendant's user-facing disclosures conceal rather than disclose the conduct at issue. The word "voiceprint" appears nowhere in Defendant's Privacy Center, Privacy Policy, or Regional Privacy Notice despite appearing approximately 200 times in Defendant's own 2020 Voiceprint Patent describing the conduct alleged here. Compl. ¶¶ 7, 35–48, 86–91. Defendant's microphone-permission pop-up describes audio access as needed for transmission, i.e. "record[ing] video with sound, mak[ing] voice and video calls, and creat[ing] voice messages," not for biometric processing. Compl. ¶¶ 54–55. The discrete pleading question of whether such allegations plausibly support voiceprint creation has already been answered, on materially identical allegations against this same Defendant: Judge Illston denied Defendant's

motion to dismiss in *Delgado v. Meta Platforms, Inc.*, 718 F. Supp. 3d 1146 (N.D. Cal. 2024), holding that the same patent and Regional Privacy Notice allegations Defendant attacks here were sufficient to plead voiceprint creation. Defendant's authorities on the "knowingly" and "without permission" elements, to wit *Tsering*, *Chegg*, *Wendover*, and *Oracle*, are materially distinguishable on their facts, procedural posture, or both. At this stage, all reasonable inferences must be drawn in Plaintiff's favor, and knowledge is generally a fact question reserved for later proceedings. *See* Fed. R. Civ. P. 9(b).

For these reasons and those set forth below, Defendant's motion should be denied.

## I. BACKGROUND

### A. Defendant's Alleged Collection and Use of Voiceprints

Defendant owns and operates the social media platform Facebook and the messaging application Messenger. Compl. ¶¶ 2–3. Messenger enables users to send instant messages, share audio recordings, exchange photos and videos, and conduct voice and video calls. Compl. ¶ 3. Beginning at least in 2025, and for many years prior, Defendant has captured, created, collected, and stored voiceprints and related biometric information of Facebook and Messenger users from audio submitted through those platforms. Compl. ¶ 6.

In December 2016, Defendant filed a patent application titled "User Identification with Voiceprints on Online Social Networks." Compl. ¶ 35. The U.S. Patent and Trademark Office issued the patent on March 31, 2020 (the "2020 Voiceprint Patent"), and Defendant has filed several continuation patents since. Compl. ¶¶ 37, 49. The 2020 Voiceprint Patent uses the term "voiceprint" approximately 200 times and describes the methods, software, and processors by which Defendant identifies users from audio input "into the social network site or related applications (e.g., an audio message sent by a Facebook user to another person via Messenger)." Compl. ¶¶ 7, 36. The patent's stated purposes for obtaining voiceprints include identifying users, authenticating users, and "identify[ing] users and provid[ing] the identified users with customized content," including targeted advertisements. Compl. ¶¶ 38, 42.

Defendant captures audio through ordinary use of Facebook and Messenger, including when users dictate text messages, send audio recordings, make voice or video calls, or upload

audio files. Compl. ¶¶ 51–52, 56–57. From that audio, Defendant creates encoded "Digital Voice Data" of the acoustic signals of the speaker's voice and processes that data through an acoustical model trained to recognize specific users. Compl. ¶¶ 58–61. Using neural networks and deep learning models, Defendant extracts distinctive "Voice Characteristics," including frequency pattern, frequency range, intonation, pitch, and accent, and stores corresponding "Voice Profiles" capable of re-identifying users. Compl. ¶¶ 62–64.

Defendant uses the voiceprints and related biometric information in its possession to improve its voice recognition and identification systems, develop voice-enabled product features, and identify users for the delivery of customized, targeted content, including targeted advertisements. Compl. ¶¶ 9, 72. Targeted advertising is Defendant's core business: in 2024, Defendant generated over $160.6 billion in advertising revenue, accounting for more than 97% of its total annual revenue. Compl. ¶ 12.

**B. Defendant's User-Facing Disclosures**

Despite using the term "voiceprint" approximately 200 times in its patents, Defendant's user-facing disclosures never use the term. Compl. ¶¶ 7, 86, 91. Defendant's Privacy Center, Privacy Policy, and U.S. Regional Privacy Notice, the documents through which Defendant purports to inform users about its data practices, make no reference to voiceprints or biometric voice analysis. Compl. ¶¶ 75–91. The Privacy Policy describes the collection of "audio" content and content provided through "voice-enabled features," but does not disclose the extraction of biometric identifiers from that content. Compl. ¶¶ 89–91.

Beginning May 23, 2025, Defendant added a single sentence to its U.S. Regional Privacy Notice acknowledging the collection of "voice recordings which may be used to identify you when you use relevant features." Compl. ¶¶ 95, 102. That sentence is the only user-facing mention of voice-based identification across all of Defendant's documents, and it neither describes voiceprint creation nor seeks affirmative consent. Compl. ¶¶ 105, 107.

When a user enables the microphone in Messenger, Defendant's pop-up states only that the microphone is needed so the user can "record video with sound, make voice and video calls, and

create voice messages." Compl. ¶ 54. The pop-up does not mention biometric data, voiceprints, or any privacy policy. Compl. ¶ 55.

### C. Plaintiff's Experience

Plaintiff Nicholas Robinson is a California resident with a Facebook account. Compl. ¶¶ 15, 109. In or around October 2025, Plaintiff used Messenger's audio call feature to speak with an acquaintance. Compl. ¶ 15. Plaintiff allowed Facebook and Messenger to access audio of his voice for the limited purpose of communicating through those applications. Compl. ¶ 111. Plaintiff never gave Defendant permission to access, obtain, or use his biometric information. Compl. ¶¶ 15, 113. During the relevant period, Defendant accessed, created, collected, captured, stored, obtained, and used Plaintiff's voiceprint and related biometric information for profit. Compl. ¶ 112.

## II. LEGAL STANDARD

In order to survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the facts alleged must "plausibly give rise to an entitlement to relief." *Dougherty v. City of Covina*, 654 F.3d 892, 897 (9th Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). At the pleading stage, all allegations of material fact are taken as true and construed in the light most favorable to the non-moving party. *Id.*

## III. ARGUMENT

Defendant's motion rests on two flawed premises: that CDAFA reaches only "hacking" harms and not the disgorgement of profits a defendant earns from misappropriating data, and that Plaintiff's act of uploading audio to communicate with friends constituted blanket consent for Defendant to extract biometric voiceprints. Recent authority in this District forecloses the first argument. The second collapses on inspection of the Complaint, which alleges that Defendant's user-facing disclosures conceal, rather than disclose, its creation and use of voiceprints. The motion should be denied.

### A. Plaintiff Adequately Alleges "Damage or Loss" Under Section 502(e)(1).

#### 1. Disgorgement of Defendant's Unjust Profits Constitutes Cognizable "Damage or Loss."

Section 502(e)(1) authorizes a civil action by an "owner or lessee . . . who suffers damage or loss by reason of a violation of any of the provisions of subdivision (c)." Cal. Penal Code § 502(e)(1). The statute does not define "damage or loss," and the most recent decisions in this District hold that disgorgement under an unjust-enrichment theory satisfies that element. Defendant's strict-construction argument is foreclosed by the California Penal Code itself, which expressly provides that "[t]he rule of the common law, that penal statutes are to be strictly construed, has no application to this code. All its provisions are to be construed according to the fair import of their terms, with a view to effect its objects and to promote justice." Cal. Penal Code § 4.

In *Smith v. Rack Room Shoes, Inc.*, decided just months ago, Judge Lin squarely rejected the argument Defendant presses here. 2025 WL 2210002 (N.D. Cal. Aug. 4, 2025). Denying the *Smith* defendant's motion to dismiss, the court held that "Plaintiffs are damaged by not having received a share of the allegedly unjust profits generated from their data." *Id.* at *3. The court relied on the Ninth Circuit's binding decision in *In re Facebook, Inc. Internet Tracking Litigation*, which held that "California law requires disgorgement of unjustly earned profits regardless of whether a defendant's actions caused a plaintiff to directly expend his or her own financial resources or whether a defendant's actions directly caused the plaintiff's property to become less valuable." 956 F.3d 589, 600 (9th Cir. 2020). *Smith* expressly addressed and rejected the argument that *In re Facebook* concerned only Article III standing: "[t]hat logic applies equally to the issue of whether plaintiffs have suffered 'damage' under CDAFA." 2025 WL 2210002, at *3. That conclusion accords with other recent decisions in this District. *See Rodriguez v. Google LLC*, 772 F. Supp. 3d 1093, 1109 (N.D. Cal. 2025) (plaintiffs stated CDAFA claim under disgorgement theory); *Brown v. Google LLC*, 685 F. Supp. 3d 909, 940 (N.D. Cal. 2023) (same).

Plaintiff's allegations fit this framework. The Complaint alleges that Defendant "profits off of the biometric data of Plaintiff and the Class" by using voiceprints to "improve its voice recognition and identification methods, software, processors, and machine learning," and to

"identify users so that it can send them customized, targeted content, including targeted advertisements." Compl. ¶ 9. In 2024, Defendant generated over $160.6 billion in advertising revenue, which accounted for more than 97% of its total annual revenue. Compl. ¶ 12; *see also* Compl. ¶ 13 (Defendant "profits from the biometric data of Plaintiff and the class by using the biometric data to . . . target users more effectively with ads"). The "stake in unjustly earned profits" the Ninth Circuit recognized, and that *Smith* and *Rodriguez* confirmed satisfies CDAFA, is plainly alleged here. *In re Facebook*, 956 F.3d at 600.[1]

Defendant's authorities were decided without the benefit of *Smith* or *Rodriguez*. *See, e.g.*, *Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d 1064, 1082 n.5 (N.D. Cal. 2023); *Cottle v. Plaid Inc.*, 536 F. Supp. 3d 461, 488 (N.D. Cal. 2021); *Pratt v. Higgins*, 2023 WL 4564551, at *9 (N.D. Cal. July 17, 2023); *Heiting v. Taro Pharms. USA, Inc.*, 709 F. Supp. 3d 1007, 1021 (C.D. Cal. 2023). To the extent *Doe v. Meta* read *In re Facebook* as addressing only Article III standing, *see* 690 F. Supp. 3d at 1082 n.5, *Smith* rejected that reading. 2025 WL 2210002, at *3. Defendant's reliance on *Hazel v. Prudential Financial, Inc.*, 2023 WL 3933073 (N.D. Cal. June 9, 2023), is similarly unhelpful. *Hazel* addressed UCL standing under Cal. Bus. & Prof. Code § 17204, which requires the plaintiff to have "lost money or property." *Id.* at *6. That is a stricter standard than CDAFA's "damage or loss." Indeed, *Smith* dismissed the UCL and CLRA claims at issue in that case while permitting the CDAFA claim, precisely the dichotomy Plaintiff invokes here. 2025 WL 2210002, at *3–*4.

### 2. <u>The Text and Structure of CDAFA Confirm That "Damage or Loss" Is Not Limited to Hacking Harms.</u>

Defendant's broader thesis that CDAFA exclusively addresses "hacking," MTD at 6–7, cannot be reconciled with the statute's text. Section 502(c)(2) prohibits "[k]nowingly access[ing] and without permission tak[ing], cop[ying], or mak[ing] use of any data," language that does not require alteration, deletion, destruction, or system-level damage. Cal. Penal Code § 502(c)(2).

[1] *Popa v. Microsoft Corp.*, 153 F.4th 784 (9th Cir. 2025) cannot save Defendant. *Popa* held that the plaintiff failed to identify a "highly offensive" common-law privacy analogue under *TransUnion*'s concreteness test. *Id.* at 791–92. The decision has no bearing on the question presented here. *Popa* does not address California substantive law, which is the source of the disgorgement principle Plaintiff invokes.

That subsection sits alongside Section 502(c)(1), which separately criminalizes data alteration and destruction. Defendant's reading would collapse Section 502(c)(2) into Section 502(c)(1), violating the canon against surplusage, which is strongest "when an interpretation would render superfluous another part of the same statutory scheme." *Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 386 (2013). The compensatory-damages floor in Section 502(e)(1), which states that such damages "shall include any expenditure reasonably and necessarily incurred . . . to verify that a computer system . . . was or was not altered, damaged, or deleted," describes a category that is included, not the exclusive scope of recoverable damage. *See United States v. Herrera*, 974 F.3d 1040, 1048 (9th Cir. 2020) ("the word include does not ordinarily introduce an exhaustive list."). The provision's express authorization of "injunctive relief or other equitable relief" reinforces that disgorgement and similar non-pecuniary remedies are available. Cal. Penal Code § 502(e)(1).

The legislative findings Defendant cites confirm this. The Legislature enacted CDAFA to "expand the degree of protection afforded to individuals" against "tampering, interference, damage, *and unauthorized access* to lawfully created computer data and computer systems." Cal. Penal Code § 502(a) (emphasis added). Unauthorized access and use of data, precisely what Plaintiff alleges, is core conduct the statute targets. As *Smith* concluded after surveying the same statutory history Defendant cites, "[the defendant's] alleged unjust profit from the use of Plaintiffs' private personal information, which holds at least some financial value to [the defendant], plausibly constitutes a 'damage or loss' within the meaning of CDAFA." 2025 WL 2210002, at *3.

Defendant's textual argument also rests on a definitional sleight-of-hand. Defendant urges the Court to construe § 502(e)(1)'s civil-standing requirement of "damage or loss" by reference to § 502(b)(10)'s definition of "injury," *i.e.*, the "alteration, deletion, damage, or destruction of a computer system" or "the denial of access to legitimate users." MTD at 6–7. But "injury" and "damage or loss" are distinct statutory terms appearing in distinct parts of CDAFA. The Legislature defined "injury" in § 502(b)(10) and used that defined term in § 502(d)(2)–(5) to calibrate the criminal felony-escalation tiers. "Damage or loss," by contrast, appears only in § 502(e)(1), the civil enforcement provision, and the Legislature declined to provide a parallel definition. That choice is meaningful. Section 502(b) supplies definitions for numerous operative

terms including "access," "computer network," "computer system," "data," and "injury," demonstrating that the Legislature knew how to constrain the meaning of statutory terms when it wished to. It opted not to do so for "damage or loss." Importing § 502(b)(10)'s definition of "injury," a criminal-penalty escalation concept, into the civil-standing requirement would add words to a statute that the Legislature deliberately left open-ended. *Cf. Russello v. United States*, 464 U.S. 16, 23 (1983) ("[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.").

Defendant's reliance on the CFAA likewise fails at the text. The Supreme Court's narrow reading of "damage" and "loss" in *Van Buren v. United States*, 593 U.S. 374 (2021), turned on the CFAA's express statutory definitions of those terms. Those definitions confine "damage" to "impairment to the integrity or availability of data, a program, a system, or information," 18 U.S.C. § 1030(e)(8), and "loss" to a "reasonable cost to any victim," 18 U.S.C. § 1030(e)(11). *See Van Buren*, 593 U.S. at 391 (expressly relying on these definitions). CDAFA contains no parallel definitions. The California Legislature's well-contemplated choice to leave those terms undefined cannot be overridden by importing the restrictive federal definitions that drove the *Van Buren* result. Recent decisions in this District have recognized as much, sustaining CDAFA claims under unjust-enrichment theories that would not satisfy *Van Buren*'s narrow CFAA framework. *See Smith*, 2025 WL 2210002, at *3; *Rodriguez*, 772 F. Supp. 3d at 1109; *Brown*, 685 F. Supp. 3d at 940. The earlier N.D. Cal. cases on which Defendant relies for CFAA–CDAFA "mirroring," *Cottle v. Plaid Inc.*, 536 F. Supp. 3d 461 (N.D. Cal. 2021); *Bui-Ford v. Tesla, Inc.*, 2024 WL 694485 (N.D. Cal. Feb. 20, 2024); *Wesch v. Yodlee, Inc.*, 2021 WL 1399291 (N.D. Cal. Feb. 16, 2021); *Nowak v. Xapo, Inc.*, 2020 WL 6822888 (N.D. Cal. Nov. 20, 2020), did not meaningfully grapple with this textual asymmetry and cannot be reconciled with *Brown*, *Rodriguez*, and *Smith*. The statute Defendant asks this Court to construe is not the CFAA.

**3. <u>The CCPA Does Not Displace Plaintiff's CDAFA Claim.</u>**

Defendant's contention that the CCPA forecloses this action misreads both statutes. *See* MTD at 9–10. Section 1798.150(c) provides that "[n]othing in this title shall be interpreted to

serve as the basis for a private right of action under any other law." Cal. Civ. Code § 1798.150(c). The provision does not preclude independent claims under separate statutes premised on independent statutory elements. *Id.* Plaintiff's CDAFA claim does not depend on any CCPA provision and could be pleaded if the CCPA had never been enacted. Defendant cites no case applying Section 1798.150(c) to displace a CDAFA claim, and courts in this District have consistently allowed CDAFA claims to proceed in data-privacy cases that might separately implicate the CCPA. *See, e.g.*, *Smith*, 2025 WL 2210002, at *3; *Rodriguez*, 772 F. Supp. 3d at 1109; *Brown*, 685 F. Supp. 3d at 940.

### B. Plaintiff Plausibly Alleges That Defendant Acted "Knowingly" and "Without Permission."

#### 1. Plaintiff's Use of Messenger to Communicate with an Acquaintance Is Not Permission to Extract Biometric Voiceprints.

Defendant's consent argument rests on a category error. The Complaint alleges that Plaintiff used Messenger's audio call feature "for the limited purpose of communicating through those applications." Compl. ¶ 111. Permission to transmit audio to another participant on a call is not permission to extract acoustic biometric features from that audio, train identification models on the resulting Voice Characteristics and Voice Profiles, and deploy those models to identify users for ad targeting. Compl. ¶¶ 58–73. The two uses are categorically different.

*Brown v. Google LLC*, 525 F. Supp. 3d 1049 (N.D. Cal. 2021), is instructive. There, plaintiffs alleged that Google associated their browsing data with preexisting user profiles in ways their consent did not cover. *Id.* at 1067. The court sustained the CDAFA claim, finding the allegations of out-of-scope use sufficient. *Id.* The *Smith* court relied on *Brown* for precisely this point. A defendant's "disclosure and use of Plaintiffs' personally identifiable information for advertising, in contradiction [of] the commitments it made in its privacy policy, can plausibly constitute a further invasion of privacy beyond the act of intercepting the information alone." 2025 WL 2210002, at *4. The dispositive question is not whether some general form of permission was given, but whether the specific use alleged falls within the permission granted.

Defendant's consent argument rests on a misreading of CDAFA's structure. Throughout its motion, Defendant treats Plaintiff's voluntary use of Facebook and Messenger, and his agreement

to Defendant's Terms of Service, as if those facts alone resolve the "without permission" element. *See* MTD at 10–13. The Ninth Circuit has rejected that approach. In *United States v. Christensen*, the court explained that CDAFA "does not require *unauthorized* access. It merely requires *knowing* access … What makes that access unlawful is that the person 'without permission takes, copies, or makes use of' data on the computer. A plain reading of the statute demonstrates that its focus is on unauthorized taking or use of information." 828 F.3d 763, 789 (9th Cir. 2015) (quoting Cal. Penal Code § 502(c)(2)) (emphasis in original).

*Christensen*'s holding governs this case. Section 502(c)(2) prohibits a person from "[k]nowingly access[ing] and without permission tak[ing], cop[ying], or mak[ing] use of any data from a computer." Cal. Penal Code § 502(c)(2). The "without permission" clause modifies "tak[ing], cop[ying], or mak[ing] use" not the antecedent "access." *Christensen*, 828 F.3d at 789. The relevant question, then, is not whether Plaintiff authorized Defendant to receive his voice audio when he placed an audio call through Messenger, which is the inquiry Defendant repeatedly invites. *See* MTD at 10 ("Plaintiff voluntarily 'input his voice into an audio function' on Facebook and Messenger."). The relevant question is whether Plaintiff authorized Defendant to take, copy, and make use of that voice data to extract acoustic biometric features, train identification models on the resulting Voice Characteristics and Voice Profiles, and deploy those models to identify users for advertising. He did not. Compl. ¶¶ 56–73, 111–13.

**2. <u>Defendant's Vague, Fragmented Disclosures Do Not Establish Authorization as a Matter of Law.</u>**

Even crediting Defendant's documents at face value, they do not establish consent. The Complaint alleges that across Defendant's Privacy Center, Privacy Policy, and other user-facing communications, the term "voiceprint" never appears. Compl. ¶¶ 7, 86, 91. That silence is striking against the backdrop of Defendant's 2020 Voiceprint Patent, which uses "voiceprint" approximately 200 times in describing precisely the conduct alleged here. Compl. ¶¶ 7, 35–48. Defendant's user-facing disclosures, in other words, omit the central concept that defines what Plaintiff alleges Defendant is doing.

Defendant's reliance on *Wendover Productions, LLC v. PayPal Inc.*, 2025 WL 3251667 (N.D. Cal. Nov. 21, 2025) is misplaced. MTD at 12. *Wendover* involved a browser extension

whose installation flow gave users explicit notice of extensive permissions before any data was accessed. *Id.* at *1, *4. Defendant's structure is the opposite. As the Complaint details, Defendant's disclosures are scattered across the Privacy Center, the Privacy Policy, the U.S. Regional Privacy Notice, and various pop-ups, none of which explains the conduct at issue. Compl. ¶¶ 74–107. Defendant's microphone-permission pop-up, which states only that the device's microphone is needed to "record video with sound, make voice and video calls, and create voice messages," affirmatively suggests that audio access is for transmission, not biometric processing. Compl. ¶¶ 54–55. Similarly, the Ninth Circuit's holding that the defendant in *Oracle USA, Inc. v. Rimini St., Inc.*, 879 F.3d 948, 962 (9th Cir. 2018), *rev'd on other grounds*, 586 U.S. 334 (2019) was "authorized in the first instance" turned on a license that indisputably authorized the underlying access. The only question was whether the manner of access exceeded the license's scope. *Oracle* therefore did not involve allegations that the defendant obtained permission through misleading or incomplete disclosures, and it did not address the question presented here: whether a user's permission to transmit audio for communication encompasses undisclosed biometric extraction.

### 3. <u>The Complaint Plausibly Alleges That Defendant Created and Used Voiceprints.</u>

Defendant seeks to hold Plaintiff to a heightened pleading standard and its arguments are more appropriately considered at a later stage of the case. The plausibility question before this Court has already been answered on materially identical allegations in *Delgado v. Meta Platforms, Inc.*, 718 F. Supp. 3d 1146, 1157 (N.D. Cal. 2024). Nevertheless, Defendant argues that Plaintiff has not plausibly alleged voiceprint creation, citing *Carpenter v. McDonald's Corp.*, 580 F. Supp. 3d 512 (N.D. Ill. 2022) and *McGoveran v. Amazon Web Services, Inc.*, 2023 WL 2683553 (D. Del. Mar. 29, 2023), for the proposition that "voice audio alone" is not a voiceprint. MTD at 13. Plaintiff's allegations go far beyond audio receipt. The Complaint pleads in detail the technical processes by which Defendant converts audio into biometric identifiers: encoded "Digital Voice Data" derived from acoustic signals; processing through "an acoustical model" trained to recognize specific users; "neural networks and deep learning models" that extract distinctive Voice Characteristics including "frequency pattern, frequency range, intonation, pitch, and accent"; and

stored "Voice Profiles" maintained for individual user re-identification. Compl. ¶¶ 58–64. These are not generic allegations.

Three categories of plausibility-supporting facts reinforce these technical allegations. First, Defendant's own patents describe the methodology, software, and processors for extracting voiceprints and using them for identification, advertising, and customized content delivery. Compl. ¶¶ 35–48. Second, the complaint further describes the method by which Plaintiff alleges Defendant captures, creates, collects, and stores voiceprints. *Id.* ¶¶ 51-73. Third, Defendant's privacy notice expressly admits that voice recordings "may be used to identify" users. *Id.* ¶ 102. *Cf. Delgado v. Meta Platforms, Inc.*, 718 F. Supp. 3d 1146, 1157 (N.D. Cal. 2024) ("Taking these allegations together, the Court finds that plaintiff has sufficiently alleged that Meta has collected her voiceprint").

**4. Knowledge Is a Fact Question Inappropriate for Resolution on a Motion to Dismiss.**

Defendant's final argument, that Plaintiff has not plausibly alleged Defendant "knew" it lacked permission, MTD at 13–14, is no stronger. Defendant relies principally on *Tsering v. Meta Platforms, Inc.*, 2026 WL 89320 (N.D. Cal. Jan. 12, 2026), but *Tsering* is distinguishable. There, the court considered Defendant's receipt of data through software development kits governed by contractual relationships with third-party developers. Judge Lin held that the allegations were insufficient to show that Defendant "knew the third-party app developers had not sought permission from the users to access the location data at issue." *Id.* at *4. Here, the relationship between Defendant and Plaintiff is direct, the disclosures are Defendant's own user-facing communications, and the conduct alleged (silent voiceprint extraction) is conduct Defendant has avoided describing in any consumer-facing document despite using the term "voiceprint" approximately 200 times in its own patents. Compl. ¶ 7. A reasonable inference from those allegations is that Defendant knew its disclosures did not authorize the conduct it was undertaking. *Chegg, Inc. v. Doe*, 2023 WL 4315540 (N.D. Cal. July 3, 2023) is also distinguishable for two reasons. First, *Chegg* was a preliminary-injunction proceeding addressing a different question: whether defendants who had been given general access to a website knew that their initial authorization had been revoked. *Id.* at *3. The "on notice" framework Defendant extracts from

*Chegg* governs revocation of permissions granted in the first instance. Plaintiff does not contend that Defendant had permission to extract voiceprints and then lost it; he contends that Defendant never had permission for that specific conduct because Defendant concealed it from its users. Compl. ¶¶ 7, 86–91, 105. There can be no "revocation" of consent that was never given. Second, Defendant's argument that Plaintiff's failure to opt out (Compl. ¶ 106) defeats the knowledge element inverts the consent inquiry. As the Complaint alleges, CDAFA requires informed consent before use, not user action to halt ongoing undisclosed use. Compl. ¶ 107.

Defendant's reliance on *Rehaif v. United States*, 588 U.S. 225 (2019), is also misplaced. *Rehaif* construed mens rea in a federal criminal firearms statute and has no application to civil CDAFA pleading. In civil cases, knowledge is generally a fact question not properly resolved on a motion to dismiss. *See* Fed. R. Civ. P. 9(b) ("Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."); *Iqbal*, 556 U.S. at 686 (same). The Complaint's specific factual allegations, Defendant's patents, its history of biometric controversies, its FTC consent orders requiring affirmative consent for biometric collection, and its conspicuous omission of "voiceprint" from user-facing disclosures, supply far more than a "parroting" allegation of knowledge. *Cf.* MTD at 15 n.5.

## IV. DISMISSAL WITH PREJUDICE IS UNWARRANTED.

Should the Court grant any portion of Defendant's motion, leave to amend should be granted. This is Plaintiff's first complaint, and Defendant's futility argument (MTD at 15) is unsupported on a first Rule 12(b)(6) motion. *See Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) ("[D]ismissal with prejudice and without leave to amend is not appropriate unless it is clear . . . that the complaint could not be saved by amendment.").

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendant's motion to dismiss in its entirety.

Dated: May 13, 2026

**BURSOR & FISHER, P.A.**

By: *__/s/ L. Timothy Fisher__*

L. Timothy Fisher (State Bar No. 191626)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: ltfisher@bursor.com

*Attorneys for Plaintiff*