LATHAM & WATKINS LLP
Melanie M. Blunschi (Bar No. 234264)
*melanie.blunschi@lw.com*
Nicholas Rosellini (Bar No. 316080)
*nick.rosellini@lw.com*
Alisha Nguyen (Bar No. 344450)
*alisha.nguyen@lw.com*
Carmen Crossley (Bar No. 344856)
*carmen.crossley@lw.com*
505 Montgomery St., Suite 2000
San Francisco, CA 94111
Telephone: +1.415.391.0600

Gary Feinerman (*pro hac vice*)
*gary.feinerman@lw.com*
Kathryn K. George (*pro hac vice*)
*katie.george@lw.com*
330 N. Wabash Ave., Suite 2800
Chicago, IL 60611
Telephone: +1.312.876.7700

*Attorneys for Defendant*
*Meta Platforms, Inc.*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

NICHOLAS ROBINSON, individually and on behalf of all others similarly situated,

Plaintiff,

v.

META PLATFORMS, INC.,

Defendant.

Case No. 3:26-cv-01616-CRB

**DEFENDANT META PLATFORMS, INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS CLASS ACTION COMPLAINT**

Hearing: July 17, 2026
Time: 10:00 a.m.
Location: Courtroom 6—17th Floor
Judge: Hon. Charles R. Breyer

## TABLE OF CONTENTS

Page

SUMMARY OF ARGUMENT ..... vi

ARGUMENT ..... 1

A. Plaintiff Does Not Allege Any Cognizable "Damage Or Loss" ..... 1

1. Plaintiff's Boundless Reading Of Section 502(e)(1) Is Wrong ..... 1

2. Even Under An Expansive Interpretation, Plaintiff's Allegations Fail ..... 5

B. Meta Did Not "Knowingly" Act "Without Permission" ..... 6

1. Plaintiff Voluntarily Uploaded His Data And Consented To Its Use ..... 6

2. Plaintiff Does Not And Cannot Plausibly Allege Knowledge ..... 9

C. Leave To Amend Should Be Denied ..... 10

## TABLE OF AUTHORITIES

### CASES

*Bonin v. Calderon*,
59 F.3d 815 (9th Cir. 1995) .......... 10

*Bridges v. Blackstone Grp., Inc.*,
2022 WL 2643968 (S.D. Ill. July 8, 2022) .......... 9

*Brodsky v. Apple Inc.*,
445 F. Supp. 3d 110 (N.D. Cal. 2020) .......... 8

*Broidy v. Glob. Risk Advisors LLC*,
2023 WL 6258135 (S.D.N.Y. Sept. 26, 2023) .......... 1

*Brown v. Google LLC*,
525 F. Supp. 3d 1049 (N.D. Cal. 2021) .......... 7

*Brown v. Google LLC*,
685 F. Supp. 3d 909 (N.D. Cal. 2023) .......... 2

*Bui-Ford v. Tesla, Inc.*,
2024 WL 694485 (N.D. Cal. Feb. 20, 2024) .......... 1

*Camreta v. Greene*,
563 U.S. 692 (2011) .......... 1

*Cobbs v. PetMed Express, Inc.*,
2026 WL 905375 (S.D. Fla. Jan. 14, 2026) .......... 5

*Cottle v. Plaid Inc.*,
536 F. Supp. 3d 461 (N.D. Cal. 2021) .......... 1, 2

*Delgado v. Meta Platforms, Inc.*,
718 F. Supp. 3d 1146 (N.D. Cal. 2024) .......... 8

*Dellasala v. Samba TV, Inc.*,
2026 WL 1138358 (N.D. Cal. Apr. 21, 2026) .......... vii, 1, 2

*Doe v. Cnty. of Santa Clara*,
2024 WL 3346257 (N.D. Cal. July 8, 2024) .......... 1

*Doe v. Meta Platforms, Inc.*,
690 F. Supp. 3d 1064 (N.D. Cal. 2023) .......... 1

*Doe v. Tenet Healthcare Corp.*,
789 F. Supp. 3d 814 (E.D. Cal. 2025) .......... 1

*F.B.T. Prods., LLC v. Aftermath Recs.*,
621 F.3d 958 (9th Cir. 2010) ........ 7

*Facebook, Inc. v. Power Ventures, Inc.*,
844 F.3d 1058 (9th Cir. 2016) ........ 7

*Gamez v. VF Corp.*,
2018 WL 6333560 (C.D. Cal. Nov. 21, 2018) ........ 9

*Gjovik v. Apple Inc.*,
2025 WL 637931 (N.D. Cal. Feb. 27, 2025) ........ 6

*Hazel v. Prudential Fin., Inc.*,
2023 WL 3933073 (N.D. Cal. June 9, 2023) (Breyer, J.) ........ 5

*Heiting v. Taro Pharms. USA, Inc.*,
709 F. Supp. 3d 1007 (C.D. Cal. 2023) ........ 1

*Hernandez-Silva v. Instructure, Inc.*,
2025 WL 2233210 (C.D. Cal. Aug. 4, 2025) ........ 5

*Hohenshelt v. Superior Ct.*,
573 P.3d 944 (Cal. 2025) ........ 4

*Holt v. First Franklin Fin. Corp.*,
2011 WL 4595195 (N.D. Cal. Sept. 30, 2011) ........ 10

*In re A.L.*,
38 Cal. App. 5th 15 (2019) ........ 9

*In re Allstate & Arity Consumer Priv. Litig.*,
2026 WL 594708 (N.D. Ill. Mar. 3, 2026) ........ 1

*In re Carrier IQ, Inc.*,
78 F. Supp. 3d 1051 (N.D. Cal. 2015) ........ 7

*In re Century Aluminum Co. Secs. Litig.*,
729 F.3d 1104 (9th Cir. 2013) ........ 10

*In re Consumer Vehicle Driving Data Tracking Collection*,
2026 WL 1092882 (N.D. Ga. Apr. 22, 2026) ........ 1

*In re Facebook, Inc. Internet Tracking Litigation*,
956 F.3d 589 (9th Cir. 2020) ........ 2

*In re Holl*,
925 F.3d 1076 (9th Cir. 2019) ........ 8

*In re iPhone Application Litig.*,
2011 WL 4403963 (N.D. Cal. Sept. 20, 2011) ........ 10

*Ingrao v. AddShoppers, Inc.*,
2024 WL 4892514 (E.D. Pa. Nov. 25, 2024) .......... 1

*Killgore v. SpecPro Pro. Servs., LLC*,
51 F.4th 973 (9th Cir. 2022) .......... 3

*Kirby v. AT&T Corp.*,
2022 WL 17184565 (S.D. Cal. 2022) .......... 10

*Lineberry v. AddShopper, Inc.*,
2025 WL 551864 (N.D. Cal. Feb. 19, 2025) .......... vii, 5, 6

*Loi v. Scribner*,
671 F. Supp. 2d 1189 (S.D. Cal. 2009) .......... 4

*Manier v. Triple Lift Inc.*,
2026 WL 1295546 (C.D. Cal. Apr. 15, 2026) .......... 10

*Nowak v. Xapo, Inc.*,
2020 WL 6822888 (N.D. Cal. Nov. 20, 2020) .......... 1

*Oracle USA, Inc. v. Rimini St., Inc.*,
879 F.3d 948 (9th Cir. 2018) .......... 8

*People ex rel. Lungren v. Superior Ct.*,
926 P.2d 1042 (Cal. 1996) .......... 9

*Popa v. Microsoft Corp.*,
153 F.4th 784 (9th Cir. 2025) .......... 2

*Pratt v. Higgins*,
2023 WL 4564551 (N.D. Cal. July 17, 2023) .......... 1

*Reisberg et al. v. Renaissance Learning, Inc.*,
2026 WL 1048242 (C.D. Cal. Feb. 17, 2026) .......... 1

*Rodriguez v. Google LLC*,
772 F. Supp. 3d 1093 (N.D. Cal. 2025) .......... 2

*Satele v. Super. Ct.*,
444 P.3d 700 (Cal. 2019) .......... 3

*Shah v. Cap. One Fin. Corp.*,
768 F. Supp. 3d 1033 (N.D. Cal. 2025) .......... 5

*Smith v. Facebook, Inc.*,
262 F. Supp. 3d 943 (N.D. Cal. 2017) .......... 7

*Smith v. Facebook, Inc.*,
745 F. App'x 8 (9th Cir. 2018) .......... 7

*Smith v. Rack Room Shoes, Inc.*,
2025 WL 2210002 (N.D. Cal. Aug. 4, 2025) .......... 1, 5, 6, 7

*Spy Dialer, Inc. v. Reya LLC*,
2018 WL 3689554 (C.D. Cal. July 26, 2018) .......... 10

*Sunbelt Rentals, Inc. v. Victor*,
43 F. Supp. 3d 1026 (N.D. Cal. 2014) .......... 2

*Ticketmaster L.L.C. v. Prestige Ent. W., Inc.*,
315 F. Supp. 3d 1147 (C.D. Cal. 2018) .......... 4

*Tsering v. Meta Platforms, Inc.*,
2026 WL 1433958 (N.D. Cal. May 21, 2026) .......... vii, 9

*Tsering v. Meta Platforms, Inc.*,
2026 WL 89320 (N.D. Cal. Jan. 12, 2026) .......... 9

*United States v. Christensen*,
828 F.3d 763 (9th Cir. 2015) .......... 7

*United States v. Nosal*,
676 F.3d 854 (9th Cir. 2012) (en banc) .......... 4

*Wendover Prods., LLC v. Paypal Inc.*,
2025 WL 3251667 (N.D. Cal. Nov. 21, 2025) .......... 8

*Wesch v. Yodlee, Inc.*,
2021 WL 1399291 (N.D. Cal. Feb. 16, 2021) .......... 1

**STATUTES**

18 U.S.C. § 1030(e)(11) .......... 4

18 U.S.C. § 1030(e)(8) .......... 4

18 U.S.C. § 1030(g) .......... 4

740 ILCS 14/15 .......... 9

Cal. Penal Code § 502(b)(10) .......... 3

Cal. Penal Code § 502(c)(1) .......... 3

Cal. Penal Code § 502(c)(2) .......... vii, 3, 6, 9

Cal. Penal Code § 502(e)(1) .......... *passim*

## SUMMARY OF ARGUMENT

Plaintiff's Opposition lays bare the fundamental problems with his claim that Meta violated CDAFA, an anti-hacking statute, by allegedly using video and audio files that he himself voluntarily uploaded to Meta's services. Plaintiff does not point to any judicial decision sustaining a CDAFA claim on similar facts. There are two reasons why that should come as no surprise.

*First*, Plaintiff did not suffer a cognizable "damage or loss" under CDAFA. *See* Mot. 6-10. Plaintiff abandons his conclusory allegation that Meta caused "damage or loss" by infringing his "privacy interests." Compl. ¶ 130. Instead, he relies solely on the notion that "unjust profits" Meta supposedly earned from allegedly using his voice and audio files would qualify as a financial harm. Opp. 5. At least a dozen cases reject that boundless interpretation of Section 502(e)(1)'s "damage or loss" requirement. *See infra* at 1 & n.1. Yet Plaintiff insists that one recent decision going the other way "forecloses" the majority view. Opp. 4. Not so. Just three weeks before Plaintiff filed his Opposition, Judge Corley rejected the very decision on which he relies, explaining all the reasons why it cannot be right. *See Dellasala v. Samba TV, Inc.*, 2026 WL 1138358, at *8-9 (N.D. Cal. Apr. 21, 2026). Regardless, even under a more expansive reading of Section 502(e)(1), Plaintiff's unjust-enrichment theory of loss fails for lack of any actual economic harm to him. *See Lineberry v. AddShopper, Inc.*, 2025 WL 551864, at *2 (N.D. Cal. Feb. 19, 2025).

*Second*, Plaintiff fails to plausibly allege that Meta took, copied, or used his voice and audio files "without permission," much less that Meta "[k]nowingly" lacked such permission. *See* Mot. 10-15. Plaintiff does not dispute that, because he voluntarily gave Meta those files, Meta did not "take[]" anything. Cal. Penal Code § 502(c)(2). Nor does Plaintiff dispute that he agreed to Meta's Terms of Use and Privacy Policy (which incorporates the Regional Policy Notice)—or that all three of those documents are judicially noticeable. Contrary to Plaintiff's confounding position, those documents granted Meta broad permission to "use[]" his voice and audio files, including for all the purposes he alleges. *Id.* At a minimum, there is no plausible basis to infer that Meta *knew* it lacked the requisite permission. *See Tsering v. Meta Platforms, Inc.*, 2026 WL 1433958, at *1 (N.D. Cal. May 21, 2026).

Each of these dispositive defects in Plaintiff's case warrants dismissal with prejudice.

## ARGUMENT

### A. Plaintiff Does Not Allege Any Cognizable "Damage Or Loss"

Plaintiff's lawsuit fails because he did not suffer any cognizable "damage or loss" under CDAFA. Cal. Penal Code § 502(e)(1). Plaintiff is wrong to suggest that essentially *any* conceivable harm from an alleged CDAFA violation can satisfy this requirement. *See* Opp. 5-9. And even under a more expansive reading of Section 502(e)(1)'s "damage or loss" requirement than statutory text, history, and purpose permit, his unjust-enrichment injury theory falters.

#### 1. Plaintiff's Boundless Reading Of Section 502(e)(1) Is Wrong

Plaintiff does not dispute that most courts—in this District and elsewhere—have construed Section 502(e)(1)'s "damage or loss" requirement to reach only concrete harms typically associated with hacking, such as costs related to "fixing a computer, lost revenue, or other consequential damages incurred due to an interruption of computer services." Mot. 6 (quoting *Pratt v. Higgins*, 2023 WL 4564551, at *9 (N.D. Cal. July 17, 2023)). Nor could he.[1] Yet Plaintiff claims that "[r]ecent authority in this District"—namely, *Smith v. Rack Room Shoes, Inc.*, 2025 WL 2210002 (N.D. Cal. Aug. 4, 2025)—"forecloses" the majority position because that case was "decided just months ago." Opp. 4-5.

Plaintiff is incorrect. A decision by another "district court judge is not binding precedent," even within "the same judicial district." *Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011). And three weeks before Plaintiff filed his Opposition, Judge Corley issued an opinion expressly rejecting *Rack Room* and methodically explaining why the minority view it represents is mistaken. *See Dellasala v. Samba TV, Inc.*, 2026 WL 1138358, at *8-9 (N.D. Cal. Apr. 21, 2026). Following

---

[1] *See, e.g.*, *In re Consumer Vehicle Driving Data Tracking Collection*, 2026 WL 1092882, at *30 (N.D. Ga. Apr. 22, 2026); *In re Allstate & Arity Consumer Priv. Litig.*, 2026 WL 594708, at *14 (N.D. Ill. Mar. 3, 2026); *Reisberg et al. v. Renaissance Learning, Inc.*, 2026 WL 1048242, at *9 (C.D. Cal. Feb. 17, 2026); *Doe v. Tenet Healthcare Corp.*, 789 F. Supp. 3d 814, 845 (E.D. Cal. 2025); *Ingrao v. AddShoppers, Inc.*, 2024 WL 4892514, at *15-16 (E.D. Pa. Nov. 25, 2024); *Doe v. Cnty. of Santa Clara*, 2024 WL 3346257, at *9 (N.D. Cal. July 8, 2024); *Bui-Ford v. Tesla, Inc.*, 2024 WL 694485, at *4, *6 (N.D. Cal. Feb. 20, 2024); *Heiting v. Taro Pharms. USA, Inc.*, 709 F. Supp. 3d 1007, 1021 (C.D. Cal. 2023); *Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d 1064, 1081-82 (N.D. Cal. 2023); *Broidy v. Glob. Risk Advisors LLC*, 2023 WL 6258135, at *9 (S.D.N.Y. Sept. 26, 2023); *Cottle v. Plaid Inc.*, 536 F. Supp. 3d 461, 485-88 (N.D. Cal. 2021); *Wesch v. Yodlee, Inc.*, 2021 WL 1399291, at *6-7 (N.D. Cal. Feb. 16, 2021); *Nowak v. Xapo, Inc.*, 2020 WL 6822888, at *5 (N.D. Cal. Nov. 20, 2020).

the clear weight of authority, Judge Corley held that the plaintiffs' asserted "loss of the right to control their own data, the loss of the value of their data, and the loss of the right to protection of their data" do not qualify as "'damage or loss' within the meaning of the CDAFA." *Id.* at *8 (quoting *Cottle*, 536 F. Supp. 3d at 488). In so holding, Judge Corley was "not persuade[d]" by *Rack Room*, which—like the other two cases Plaintiff cites, *Brown v. Google LLC*, 685 F. Supp. 3d 909 (N.D. Cal. 2023), and *Rodriguez v. Google LLC*, 772 F. Supp. 3d 1093 (N.D. Cal. 2025)—erroneously "relied on language from *In re Facebook, Inc. Internet Tracking Litigation*, 956 F.3d 589 (9th Cir. 2020), regarding Article III standing." *Dellasala*, 2026 WL 1138358, at *8-9. As Judge Corley explained, *In re Facebook* "did not address CDAFA's damage or loss requirement," which is not "equivalent" with "Article III standing." *Id.* And much of that decision's Article III standing analysis "does not align with" intervening Supreme Court authority, as the Ninth Circuit itself has since observed. *Id.* (citing *Popa v. Microsoft Corp.*, 153 F.4th 784, 792 (9th Cir. 2025)); *see* Mot. 8-9.

CDAFA's text, structure, and purpose confirm Judge Corley's construction of Section 502(e)(1)'s "damage or loss" requirement. As Meta explained, CDAFA unmistakably targets hacking. *See* Mot. 1-2, 6-7. It would be anomalous for this "anti-hacking statute" to provide a remedy for purported harms related to alleged misuse of files that Plaintiff *himself* uploaded to Meta's own services. *Sunbelt Rentals, Inc. v. Victor*, 43 F. Supp. 3d 1026, 1032 (N.D. Cal. 2014).

Plaintiff cites no case sustaining a CDAFA claim on comparable facts, and the statutory text forecloses his unlikely reading. There would be no reason for Section 502(e)(1) to clarify that "compensatory damages" can be recovered for costs incurred "to verify that a computer system … or data was or was not altered, damaged, or deleted" if the provision's "damage or loss" requirement extended as far as Plaintiff asserts. *See* Mot. 6-7. Plaintiff does not address that critical surplusage problem. Instead, he constructs a strawman, noting that verification-related expenses are not the "exclusive scope of recoverable damage" under CDAFA. Opp. 7. Of course that's true, but it misses the point—which is that Section 502(e)(1)'s clarification about recoverable damages would be unnecessary if Plaintiff were right that the phrase "damage or loss," on its own, encompassed any conceivable harm stemming from an alleged CDAFA violation. *See* Mot. 6-7.

With no viable answer to that key textual reality, Plaintiff conjures his own surplusage argument. Opp. 7. He maintains that because Section 502(c)(1) "separately criminalizes data alteration and destruction," a narrow reading of Section 502(e)(1)'s "damage or loss" requirement would "collapse" Section 502(c)(1)'s proscription and Section 502(c)(2)'s prohibition on "tak[ing], cop[ying], or mak[ing] use of any data" without permission. *Id.* Not so. Judge Corley's reading of Section 502(e)(1)'s "damage or loss" requirement means only that Section 502(c)(2) claims may not proceed absent a harm commonly associated with hacking. Such harms include not just damage to computer systems or data, but also verification and remediation expenses. So, under the majority view, a Section 502(c)(2) claim can still be brought for conduct that does not violate Section 502(c)(1). But here, because Plaintiff alleges nothing resembling hacking-related harms, he lacks a viable claim under Section 502(c)(2) or any other CDAFA provision.

Plaintiff next faults Meta for "urg[ing] the Court to construe § 502(e)(1)'s civil-standing requirement of 'damage or loss'" consistent with "§ 502(b)(10)'s definition of 'injury'" for criminal sentencing purposes. Opp. 7. In so arguing, Plaintiff emphasizes that Section 502(b)(10) defines "[i]njury" as "any alteration, deletion, damage, or destruction of a computer system, computer network, computer program, or data caused by" an alleged CDAFA violation, while Section 502(e)(1) leaves "undefined" the phrase "damage or loss." *Id.* at 8. This argument, too, misses the mark. Although "injury" under Section 502(b)(10) and "damage or loss" under Section 502(e)(1) are indeed "distinct statutory terms," *id.* at 7, Plaintiff's insistence that the latter is wildly broader than the former is an odd way of "harmonizing" these "provisions relating to the same subject matter," as California law requires, *Killgore v. SpecPro Pro. Servs., LLC*, 51 F.4th 973, 983 (9th Cir. 2022) (quoting *Satele v. Super. Ct.*, 444 P.3d 700, 704 (Cal. 2019)). Especially given CDAFA's hacking-focused "legislative purpose," *id.*, the better reading is that "damage or loss" under Section 502(e)(1) is slightly broader than "injury" under Section 502(b)(10)—in that "damage or loss" also encompasses direct financial consequences of a CDAFA violation, such as verification and remediation expenses. Construed that way, Section 502(e)(1)'s "civil-standing requirement" is not quite as restrictive as Section 502(b)(10)'s "criminal-penalty escalation" provision, Opp. 8, but still has teeth. That makes perfect sense. CDAFA's lack of an express

definition of "damage or loss" is no reason to read those words as capaciously as possible.

Nor is it license to disregard Supreme Court precedent construing the materially similar "damage or loss" requirement in CDAFA's federal analogue, the CFAA. *Contra* Opp. 8. True, the CFAA includes more detail by defining: (1) "damage" as "any impairment to the integrity or availability of data, a program, a system, or information," 18 U.S.C. § 1030(e)(8); and (2) "loss" as "any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information" and "any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service," *id.* § 1030(e)(11). But in drafting CDAFA, the Legislature may have simply concluded that such detail was unnecessary or otherwise decided to employ a more streamlined approach. What matters is that the CFAA and CDAFA use the identical phrase: "damage or loss." *Compare* 18 U.S.C. § 1030(g) *with* Cal. Penal Code § 502(e)(1). It would make no sense for those exact same words to have two completely different meanings under two closely related statutes, and there is no basis to think the Legislature intended that counterintuitive result. *See Ticketmaster L.L.C. v. Prestige Ent. W., Inc.*, 315 F. Supp. 3d 1147, 1174 (C.D. Cal. 2018) (observing that CDAFA is the CFAA's "state-law analogue"); *cf. Loi v. Scribner*, 671 F. Supp. 2d 1189, 1199 (S.D. Cal. 2009) (emphasizing the "strong presumption" that where "a statute uses terms that have been judicially constructed," the Legislature used those terms in that "precise manner"). The "CFAA is 'an anti-hacking statute,' not 'an expansive misappropriation statute.'" *United States v. Nosal*, 676 F.3d 854, 857 (9th Cir. 2012) (en banc). The same goes for CDAFA. *See supra* at 1 & n.1.

Radically expanding CDAFA's civil cause of action would be especially problematic given how carefully the Legislature limited private data-misappropriation lawsuits under the CCPA. *See* Mot. 9-10. Plaintiff responds that the CCPA does not directly "preclude independent claims under separate statutes premised on independent statutory elements" and thus would not "displace" an otherwise available CDAFA claim. Opp. 9. True enough, but once again off the mark. Meta's point is simply this: Plaintiff is transparently trying to circumvent the CCPA's constraints by jerry-rigging a cause of action under CDAFA. And given the need to "construe every statute with reference to the whole system of law of which it is a part," *Hohenshelt v. Superior Ct.*, 573 P.3d

944, 954 (Cal. 2025), Plaintiff's call to distort CDAFA's limits on civil liability in service of evading the CCPA's limits should be rejected.

**2. Even Under An Expansive Interpretation, Plaintiff's Allegations Fail**

At any rate, Plaintiff's lawsuit would still fail if Section 502(e)(1)'s "damage or loss" requirement were interpreted to extend beyond harms commonly associated with hacking. Even if Plaintiff "may allege damage or loss from the misappropriation of their data," he would have to "articulate that theory of loss [in] a concrete way." *Lineberry v. AddShopper, Inc.*, 2025 WL 551864, at *2 (N.D. Cal. Feb. 19, 2025). He comes nowhere close.

Plaintiff correctly abandons the Complaint's reliance on vague allegations that Meta somehow infringed his "privacy interests." Compl. ¶ 130. But he doubles down on what he calls an "unjust-enrichment" or "disgorgement" theory of harm—i.e., "not having received a share of the allegedly unjust profits generated from [his] data." Opp. 5 (quoting *Rack Room*, 2025 WL 2210002, at *3). That theory does not work. "Even accepting" Plaintiff's "disgorgement theory" at face value, "it is not enough to satisfy what matters here—which is the statutory requirement in the CDAFA that *the data owner herself* suffer some non-speculative damage or loss." *Cobbs v. PetMed Express, Inc.*, 2026 WL 905375, at *9-10 (S.D. Fla. Jan. 14, 2026) (emphasis added) (dismissing disgorgement-based CDAFA claim for failure to allege cognizable "damage or loss").

Plaintiff does not explain "how or why" he "suffer[ed] an economic loss" from Meta's alleged use of his voice and audio files. *Lineberry*, 2025 WL 551864, at *2. He "neither alleges that there is a market for individual people's" voice and audio files (or alleged voiceprints), "nor anything about what the actual value of [his] data could be." *Id.* His conclusory allegation of Meta supposedly "profiting from [voice and audio] data generally" is insufficient. *Hernandez-Silva v. Instructure, Inc.*, 2025 WL 2233210, at *6 (C.D. Cal. Aug. 4, 2025), *appeal docketed*, No. 25-5438 (9th Cir. Aug. 25, 2025). As this Court has explained, a bare allegation that the defendant "might have made money" does not mean the plaintiff "lost money" as a result. *Hazel v. Prudential Fin., Inc.*, 2023 WL 3933073, at *6 (N.D. Cal. June 9, 2023) (Breyer, J.) (dismissing UCL claim); *accord Shah v. Cap. One Fin. Corp.*, 768 F. Supp. 3d 1033, 1048 (N.D. Cal. 2025) (adopting *Hazel*'s reasoning and dismissing CDAFA claim). A defendant's purported financial gain is not

necessarily a plaintiff's "economic loss." *Lineberry*, 2025 WL 551864, at *2; *contra Rack Room*, 2025 WL 2210002, at *3 (asserting otherwise). That independently forecloses Plaintiff's unjust-enrichment theory of harm.

**B. Meta Did Not "Knowingly" Act "Without Permission"**

Plaintiff's Opposition confirms that Meta did not take any purportedly wrongful action alleged here "without permission"—and surely did not "[k]nowingly" lack such permission. Cal. Penal Code § 502(c)(2). This too independently warrants dismissal. *See* Mot. 10-15.

**1. Plaintiff Voluntarily Uploaded His Data And Consented To Its Use**

Plaintiff does not dispute that, because he gave Meta his voice and audio files, Meta did not "take[]" them in violation of Section 502(c)(2). *See* Mot. 10. Rather, Plaintiff focuses on the particular "uses" to which he alleges Meta put those files—i.e., to "extract acoustic biometric features," "train identification models," and "identify users for ad targeting." Opp. 9-10. Even crediting Plaintiff's inadequately pleaded allegations regarding what Meta supposedly did with his files, those purported uses could not have been done "without [his] permission." *See* Mot. 10-13.

Plaintiff acknowledges that, before voluntarily uploading his voice and audio files to Meta's services, he agreed to Meta's Terms of Service and Privacy Policy (which incorporates the Regional Privacy Notice). Opp. 9-10; *see* Mot. 3-4. Plaintiff does not dispute that this Court can consider the full text of those documents. Dkt. 21 ("RJN") at 2-8; *see Gjovik v. Apple Inc.*, 2025 WL 637931, at *8 (N.D. Cal. Feb. 27, 2025) (deeming plaintiff's "failure to timely oppose the request for judicial notice a waiver of any argument challenging the request for judicial notice"). And Plaintiff admits that these documents grant Meta express "[p]ermission to use" his data—including by using "voice recordings" to "identify" him. Mot. 3-4 (first quoting Ex. 3 at 6, then quoting Ex. 8 at 1-2); *see* Opp. 3, 12. Yet, despite having concededly assented to those directly applicable terms, Plaintiff insists that Meta lacked "permission" to "use" voice recordings to supposedly identify him. Cal. Penal Code § 502(c)(2); *see* Opp. 9-12. That makes no sense.

Plaintiff first responds with a non-sequitur. He asserts that, because Section 502(c)(2)'s "'without permission' clause modifies 'tak[ing], cop[ying], or mak[ing] use' [and] not the antecedent 'access,'" the provision's "focus is on unauthorized taking or use of information,"

rather than on unauthorized access. Opp. 10 (quoting *United States v. Christensen*, 828 F.3d 763, 789 (9th Cir. 2015)). Meta has never argued otherwise. Meta's position is that Plaintiff authorized every supposed *use* of his voice and audio files alleged in the Complaint by assenting to Meta's terms and policies and then voluntarily uploading those files to Meta's services. *See* Mot. 10-13.

Plaintiff next claims that Meta acted "without permission" because he used Meta's services "for the limited purpose of communicating through those applications." Opp. 9 (quoting Compl. ¶ 111). But CDAFA's "without permission" element turns on whether the defendant had "authorization" to use the plaintiff's data, not on the plaintiff's state of mind. *In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1100 (N.D. Cal. 2015). Even "implied authorization" precludes a CDAFA violation. *Facebook, Inc. v. Power Ventures, Inc.*, 844 F.3d 1058, 1069 (9th Cir. 2016). And here, where "the practice complained of f[ell] within the scope" of Meta's terms and policies, Meta had authorization—indeed, express authorization—to use Plaintiff's voice and audio files in all the ways he alleges. *Smith v. Facebook, Inc.*, 745 F. App'x 8, 9 (9th Cir. 2018). Plaintiff's assertion that he used Messenger for a "limited purpose" does not negate his assent. Holding otherwise would require defendants to divine individual users' usage habits and subjective intentions to determine a bespoke set of "permitted" uses of their data. CDAFA does not establish such an unworkable standard.[2]

Plaintiff is wrong to insist that these Meta's Terms of Service, Privacy Policy, and Regional Privacy Notice are too "vague" to be legally effective because they use terms like "voice recordings" and "audio" but not the term "voiceprint." Opp. 10. A "contractual term is not ambiguous just because it is broad." *F.B.T. Prods., LLC v. Aftermath Recs.*, 621 F.3d 958, 964 (9th Cir. 2010); *see, e.g.*, *Smith v. Facebook, Inc.*, 262 F. Supp. 3d 943, 953-54 (N.D. Cal. 2017) (rejecting argument that Meta's disclosures were too "vague" and "broad" to establish consent), *aff'd*, 745 F. App'x 8 (9th Cir. 2018). Here, Meta informed users that Meta receives "voice

---

[2] Plaintiff's citations on this issue are inapposite. *See* Opp. 9-10. The cited portion of *Rack Room* addressed whether the plaintiffs adequately alleged the defendant had an "independent prohibited purpose," a requirement under the federal Wiretap Act that does not apply to CDAFA. 2025 WL 2210002, at *4-5. And in *Brown v. Google LLC*, 525 F. Supp. 3d 1049 (N.D. Cal. 2021), the defendant made multiple representations affirmatively suggesting that it did *not* collect certain data in private browsing mode, when in fact the opposite was true. *See id.* at 1063-67.

recordings" and *may* use them to "identify" users, including potentially for the purpose of "[p]roviding, personalizing, and improving our products, including ads." Compl. ¶ 102; *see* Mot. 11-12. That language expressly encompasses the exact conduct Plaintiff (inadequately) alleges—i.e., using voice and audio data "to identify users so that [Meta] can send them customized, targeted content, including targeted advertisements." Compl. ¶ 72.

Plaintiff's critique of these documents is especially misplaced under CDAFA. The statute cares only about whether the defendant had permission to use the data generally; it imposes no "duty to disclose" precisely "how permissions will be exercised." *Wendover Prods., LLC v. Paypal Inc.*, 2025 WL 3251667, at *5 (N.D. Cal. Nov. 21, 2025). That is, Plaintiff cannot state a CDAFA claim by challenging a particular "*method*" of use as supposedly not covered by "the applicable terms of use," when the alleged use itself "was authorized in the first instance." *Oracle USA, Inc. v. Rimini St., Inc.*, 879 F.3d 948, 962 (9th Cir. 2018), *rev'd on other grounds*, *Rimini St. v. Oracle USA, Inc.,* 586 U.S. 334 (2019); *cf. Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110, 131-32 (N.D. Cal. 2020) (dismissing CDAFA claim based on allegedly unauthorized "method" of accessing data that the defendant was otherwise "authorized in the first instance" to access). That is all he does here.

It is no answer for Plaintiff to say that the relevant disclosures are "scattered" across different documents. Opp. 11. A "contract may incorporate documents and terms by reference." *In re Holl*, 925 F.3d 1076, 1084 (9th Cir. 2019). And a party can "unequivocally assent[]" to incorporated terms, even if reviewing them requires "several steps and a fair amount of web-browsing intuition." *Id.* at 1083-85. Plaintiff does not dispute that Meta's Terms of Service incorporate the Privacy Policy and Regional Privacy Notice. *See* Mot. 3-4, 10-11; RJN at 4-6. He thus assented to all three, thereby granting Meta permission to use his voice and audio data in all the ways he alleges.

In the end, Plaintiff effectively admits that these documents *do* encompass, among other things, the potential creation of voiceprints. Plaintiff claims to have "plausibly alleged voiceprint creation" in part because Meta's "privacy notice expressly admits that voice recordings '*may* be used to identify' users." Opp. 11-12 (emphasis added) (quoting Compl. ¶ 102). To be clear, Meta disagrees with that reasoning and respectfully maintains that *Delgado v. Meta Platforms, Inc.*, 718

F. Supp. 3d 1146 (N.D. Cal. 2024), incorrectly accepted it. *See* Mot. 13 (citing *Gamez v. VF Corp.*, 2018 WL 6333560, at *3 (C.D. Cal. Nov. 21, 2018), and *Bridges v. Blackstone Grp., Inc.*, 2022 WL 2643968, at *5 (S.D. Ill. July 8, 2022)). But regardless, Plaintiff cannot have it both ways: If Plaintiff thinks this Court can plausibly infer from these documents that Meta in fact used voice recordings to create voiceprints, then he too was surely on notice about potential voiceprint creation. Plaintiff's reliance on *Delgado* is accordingly misplaced. If anything, it confirms that Meta could not have acted "without permission" under CDAFA. Cal. Penal Code § 502(c)(2).[3]

**2. Plaintiff Does Not And Cannot Plausibly Allege Knowledge**

In addition, Plaintiff "fails to state a claim under CDAFA because [he] does not plausibly allege that Meta *knew* its" alleged use of Plaintiff's voice and audio data was purportedly done "without [his] permission." *Tsering v. Meta Platforms, Inc.*, 2026 WL 1433958, at *1 (N.D. Cal. May 21, 2026) (dismissing with prejudice CDAFA claim against Meta). That is especially true because only "actual knowledge," as opposed to constructive knowledge, suffices under CDAFA. *Id.* (quoting *In re A.L.*, 38 Cal. App. 5th 15, 22 (2019)). Plaintiff's arguments on this point confirm how far he is from alleging that Meta actually knew—or even had reason to believe—that it lacked permission to use Plaintiff's uploaded files in the manner alleged here. *See* Mot. 13-15. And since CDAFA is a "criminal statute[]," Meta is "entitled to the benefit of every reasonable doubt" on this score. *People ex rel. Lungren v. Superior Ct.*, 926 P.2d 1042, 1054 (Cal. 1996) (holding that the rule of lenity still applies, notwithstanding California's statutory requirement that penal code provisions be interpreted according to their terms).

Plaintiff first argues that Meta knew that its "own user facing communications"—e.g., Meta's Terms of Use, Privacy Policy, and Regional Privacy Notice—did not "us[e] the term 'voiceprint.'" Opp. 12. But as just explained, the text of those broad disclosures *did* authorize potential creation of voiceprints—by disclosing the potential use of Plaintiff's "voice." Mot. 3-4. At a minimum, the text was not so "opaque" as to suggest that "Meta had to know" these documents "could not possibly obtain effective consent." *Tsering v. Meta Platforms, Inc.*, 2026

---

[3] Notably, Plaintiff does not dispute that BIPA's heightened notice and consent requirements do not apply in this case. *See* Mot. 4-5 (citing 740 ILCS 14/15).

WL 89320, at *5 (N.D. Cal. Jan. 12, 2026) (granting first motion to dismiss CDAFA claim in *Tsering* litigation); *see also In re iPhone Application Litig.*, 2011 WL 4403963, at *12 (N.D. Cal. Sept. 20, 2011) (holding that a CDAFA claim cannot rest on "vague or ambiguous terms of use" plus a conclusory allegation that defendant knew it lacked permission). Meta's disclosures to Plaintiff gave Meta every reason to believe it *did* have the requisite permission.

Plaintiff next points to Meta's "patents" for voiceprint technology. Opp. 12-13. But those patents reflect only that Meta had rights to the technology described, not that Meta knowingly lacked permission to (allegedly) apply it to Plaintiff's voice and audio files. *See* Mot. 13. Plaintiff's reliance on unrelated "biometric controversies" and regulatory proceedings is similarly off base. Opp. 13. He does not and could not explain how they supposedly bear on Meta's mental state as to the disclosures and conduct at issue. *Id.*; *see also* Compl. ¶¶ 26-34.

Nor can Plaintiff sidestep CDAFA's knowledge requirement by asserting that knowledge "is generally a fact question [inappropriate for resolution] on a motion to dismiss." Opp. 12-13. To the contrary, Plaintiff must "plead sufficient facts on which the Court can properly infer the requisite mens rea" to survive dismissal. *Kirby v. AT&T Corp.*, 2022 WL 17184565, at *5 (S.D. Cal. 2022) (dismissing CDAFA claim for failure to plead intent); *see also Manier v. Triple Lift Inc.*, 2026 WL 1295546, at *4-5 (C.D. Cal. Apr. 15, 2026) (same); *Spy Dialer, Inc. v. Reya LLC*, 2018 WL 3689554, at *1 (C.D. Cal. July 26, 2018) (same). His conclusory allegations "do not tend to exclude the possibility" that Meta believed it had permission to use Plaintiff's voice and audio files in all the ways he alleges. *In re Century Aluminum Co. Secs. Litig.*, 729 F.3d 1104, 1108 (9th Cir. 2013). Accordingly, Plaintiff's knowledge "allegations are insufficient to withstand a motion to dismiss." *Id.* at 1109.

### C. Leave To Amend Should Be Denied

The fatal flaws in Plaintiff's case cannot be cured. *See* Mot. 15. Indeed, Plaintiff makes only "a conclusory request for leave to amend" and "fail[s] to allege any facts in support of such request," confirming that this case should be "dismissed without leave to amend." *Holt v. First Franklin Fin. Corp.*, 2011 WL 4595195, at *3 (N.D. Cal. Sept. 30, 2011) (citing *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995)). Plaintiff's lawsuit lacks merit and should end now.

Dated: June 3, 2026

Respectfully submitted,

LATHAM & WATKINS LLP

By: /s/ *Melanie M. Blunschi*
Melanie M. Blunschi (Bar No. 234264)
*melanie.blunschi@lw.com*
Nicholas Rosellini (Bar No. 316080)
*nick.rosellini@lw.com*
Alisha Nguyen (Bar No. 344450)
*alisha.nguyen@lw.com*
Carmen Crossley (Bar No. 344856)
*carmen.crossley@lw.com*
505 Montgomery St., Suite 2000
San Francisco, CA 94111
Telephone: +1.415.391.0600

Gary Feinerman (*pro hac vice*)
*gary.feinerman@lw.com*
Kathryn K. George (*pro hac vice*)
*katie.george@lw.com*
330 N. Wabash Ave., Suite 2800
Chicago, IL 60611
Telephone: +1.312.876.7700

*Attorneys for Defendant*
*Meta Platforms, Inc.*