United States District Court
Northern District of California

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA

NICHOLAS ROBINSON,
Plaintiff,
v.
META PLATFORMS, INC.,
Defendant.

Case No. 26-cv-01616-CRB

**ORDER GRANTING MOTION TO DISMISS**

Plaintiff Nicholas Robinson sued Defendant Meta Platforms, Inc., alleging that it unlawfully collected user voice data—or "voiceprints"—through its social media and messaging platforms, Facebook and Messenger. Compl. (dkt. 1-1). Meta moves to dismiss, arguing that Robinson fails to state a claim under the California Comprehensive Computer Data Access and Fraud Act ("CDAFA"). Mot. (dkt. 20). The Court **GRANTS** Meta's motion and dismisses Robinson's complaint without leave to amend.

## I. BACKGROUND

Robinson is a registered Facebook and Messenger user. Compl. ¶¶ 109–10. Meta is the owner and operator of both digital platforms. Id. ¶¶ 2–3. Meta's primary source of income is through the sale of advertisements. Id. ¶¶ 10, 12. While using these platforms, Robinson allowed Facebook and Messenger to have access to his voice whenever he communicates via the apps. Id. ¶ 111. He maintains that he allowed Meta access to his voice "for the limited purpose of communicating through those applications." Id. ¶ 111.

At least since 2025, Meta has allegedly collected and used user data that it has obtained through voiceprints. Id. ¶ 6. After applying in 2016, Meta obtained a patent for using voiceprint technology to identify users in March 2020. Id. ¶¶ 35–37. The patent

details the processes by which Meta receives audio input and uses it to identify users and send targeted content to them. Id.

As part of his use of Meta's services, Robinson agreed to the Meta Terms of Service, which incorporates various documents including the Privacy Policy and the supplementary U.S. Regional Privacy Notice.[1] Id. ¶¶ 109–10; Mot. at 3–4. In these Terms, a user agrees to allow Meta to "show ads that it thinks may be relevant to [the user]" by "us[ing] [his] personal data." TOS 2023 (dkt. 20-4). Within the U.S. Regional Privacy Notice, which "supplements the Meta Privacy Policy," Meta states that "voice recordings . . . may be used to identify [users]" and "provid[e], personaliz[e], and improv[e] [Meta's] products," including through advertisements. Mot. at 4; Compl. ¶¶ 102, 104; U.S. Priv. Notice 2022 (dkt. 20-9). Robinson argues that these terms do not

---

[1] Meta seeks to incorporate various documents into the Court's analysis, some via incorporation by reference and some by requesting judicial notice. Req. for Judicial Notice (dkt. 21). Robinson did not oppose this request. Reply (dkt. 28) at 6. The Court GRANTS these requests.

In Khoja v. Orexigen Therapeutics, Inc., the Ninth Circuit held that a defendant may seek to incorporate a document if plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim. 899 F.3d 988, 1002 (9th Cir. 2018). Mere mention of the document is not enough. Id. (citing Ritchie Coto Settlement v. Eisenberg, 593 F.3d 1021, 1038 (9th Cir. 2010)). Similarly, a court may take judicial notice of matters not subject to reasonable dispute. Fed. R. Evid. 201(b). Such matters must be "generally known or accurately and readily determined from sources whose accuracy cannot be questioned." Khoja, 899 F.3d at 999.

Robinson refers extensively to several documents. He cites to the 2020 Voiceprint patent, Compl. ¶¶ 37–48, Meta's Privacy Center, id. ¶¶ 76–86, and Meta's Privacy Policy and U.S. Privacy Notice, id. ¶¶ 87–106, at length. The Court holds that Robinson's repeated reference to these documents across several allegations, and the documents' central role in aspects of Robinson's claim, allows the Court to incorporate them by reference. See Khoja, 899 F.3d at 1002. Accordingly, the Court may "assume" these documents' "contents are true." Id. at 1003 (quoting Marder v. Lopez, 450 F.3d 445, 448 (9th Cir. 2006)).

Additionally, Meta requested judicial notice for eleven documents, two of which are relevant and not already incorporated into the complaint by reference: two versions of the Facebook Sign-Up Page in November 2022 (dkt. 20-2) and January 2026 (dkt. 20-3). Req. for Judicial Notice at 2. Courts may take judicial notice of websites and terms of services. Taiming Zhang v. Twitter Inc., No. 23-cv-00980-JSC, 2023 WL 5493823, at *3 (N.D. Cal. Aug. 23, 2023). The Court takes notice of these documents. The other documents have either been incorporated by reference or were not ultimately relevant to resolving the motion to dismiss.

adequately represent Meta's use of voiceprints, and are hidden from the user through confusing and layered privacy policies. Id. ¶¶ 1, 7, 8; Opp'n at 10–11.

Robinson filed suit in state court and Meta removed the case. Notice of Removal (dkt. 1) at 7. Robinson brings a single claim under Section 502(c)(2) of CDAFA, which makes it unlawful for a person to knowingly access and use data from another's computer without authorization. Compl. ¶¶ 125–34. Robinson alleges that Meta profits off his data by using it to improve products and send targeted advertising content to users. Id. ¶ 9. He alleges that voiceprints are a form of data protected from unauthorized use under CDAFA, and he seeks to bring a class action on behalf of all persons in California who have had their voiceprints accessed, collected, and used by Meta without their knowledge or consent. Id. ¶ 1. Finally, because Meta is an advertising company, Robinson alleges that Meta unjustly profited from his biometric data and, therefore, requests that the Court grant damages and/or disgorgement. Id. ¶¶ 9, 10, 12, 13, 135. Meta moved to dismiss. Mot. at 15.

## II. LEGAL STANDARD

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court may dismiss a complaint for failure to state a claim upon which relief may be granted. The Court may base dismissal on either "the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." Godecke v. Kinetic Concepts, Inc., 937 F.3d 1201, 1208 (9th Cir. 2019) (citation modified). A complaint must plead "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation modified). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to survive a 12(b)(6) motion. Id. (citing Bell Atl. v. Twombly, 550 U.S. 544, 555 (2007)). When evaluating a motion to dismiss, the Court "must presume all factual allegations of the complaint to be true and draw all reasonable inferences in favor of the

nonmoving party." Usher v. City of Los Angeles, 828 F.2d 556, 561 (9th Cir. 1987).

## III. DISCUSSION

Under CDAFA, any person who "[k]nowingly accesses and without permission takes, copies, or makes use of any data from a computer [or] computer system" is guilty of a public offense. Cal. Penal Code § 502(c)(2). CDAFA also creates a private right of action, allowing recovery of "damage or loss . . . against the violator for compensatory damages" and equitable relief. Id. § 502(e)(1).

Meta argues that Robinson fails to state a claim for four reasons. First, Meta asserts that the California Consumer Privacy Act ("CCPA") displaces Robinson's claim. Mot. at 10. Second, Meta contends that Robinson did not sufficiently plead that Meta "used" his voiceprints. Mot. at 13. Third, Meta maintains that Robinson failed to plead that Meta had the requisite knowledge that it lacked permission to use his data as required by Section 502(c)(2). Id. at 10–15. Fourth, Meta argues that Robinson did not allege cognizable "damage or loss" as required by Section 502(e)(1). Id. at 6–10. Because the Court determines that Meta's third argument is sufficient to dismiss Robinson's complaint, it does not address the remaining arguments. Based on Meta's terms of service and Robinson's consent to their data collection, the Court **GRANTS** the motion to dismiss.

### A. Permission

To violate CDAFA, a defendant must use a plaintiff's data "knowingly" and "without permission." Cal. Penal Code § 502(c)(2). Courts in this District have concluded that "the term 'knowingly' modifies each element of the alleged violation," meaning a defendant must have known that it lacked authorization to access or use the user's data. See, e.g., Tsering v. Meta Platforms Inc., No. 25-cv-01611-RFL, 2026 WL 89320, at *4 (N.D. Cal. Jan. 12, 2026) (citation modified) (citing People v. Hawkins, 98 Cal. App. 4th 1428, 1438 (2002)).[2]

[2] Robinson erroneously argues that under Federal Rule of Civil Procedure 9(b), he may plead knowledge generally. Opp'n at 13. Rule 9(b) does not apply to this case because Section 502(c)(2) does not involve fraud as an element. See Fed. R. Civ. P. 9(b). See, e.g., So v. HP, Inc., No. 22-02327-BLF, 2023 WL 4596778 (N.D. Cal. July 17, 2023) (distinguishing between a



United States District Court
Northern District of California

A plaintiff allows a defendant to take and use his data so long as he gives permission "in the first instance." Oracle USA, Inc. v. Rimini St., Inc., 879 F.3d 948, 962 (9th Cir. 2018), rev'd on other grounds, Rimini St. v. Oracle USA, Inc., 586 U.S. 334 (2019). And California law assumes that "users actually read [a website's] contractual language before clicking their acceptance." See In re Facebook, Inc., Consumer Priv. User Profile Litig., 402 F.Supp.3d 767, 789 (N.D. Cal. 2019). A plaintiff may, however, put a defendant "on notice" that he has revoked authorization. Facebook, Inc. v. Power Ventures, Inc., 844 F.3d 1058, 1067 n.3 (9th Cir. 2016).

Before using Facebook, a user must agree to Meta's Terms of Service. Mot. at 10–11. The Facebook sign-up page from 2023 states that "By clicking Sign Up, [the user] agree[s] to [Meta's] Terms." Sign Up Page 2022. It also provides a link to the Privacy Policy. Id. As a user, Robinson concedes that he agreed to the Terms of Service. See Compl. ¶ 110; Mot. at 10–11; Opp'n at 9–10. Meta argues that these documents provide explicit authorization for Meta's use of user data. Mot. at 10–11. Specifically, in the Terms of Service, a user agrees to allow Meta to "use [his] personal data to help determine which personalized ads to show [him]." Mot. at 12; TOS 2023.

Robinson disagrees. He argues that the Terms of Service and Privacy Policies were deficient and he did not consent because: (1) the disclosures are "scattered" across multiple documents; (2) the term "voiceprint" never appears in any of the documents; and (3) he did not consent to this specific use of his data. Opp'n at 11–12. The Court rejects each of these arguments.

First, it is of no consequence that Meta disclosed its policy across several documents. The Ninth Circuit recognizes that online user contracts, such as Terms of Service, "may incorporate documents and terms by reference" and that assent to such terms is valid even if it requires "several steps and . . . web-browsing intuition." In re Holl, 925 F.3d 1076, 1083–85 (9th Cir. 2019). Here, the Privacy Policy and the U.S.

---

CDAFA Section 502(c)(1) claim, which implicates fraud, and a 502(c)(2) claim, which does not).

United States District Court
Northern District of California

Regional Privacy Notice were incorporated into the Terms of Service: they are mentioned several times and accessible via links through the Terms of Service and on the Facebook Sign Up Page where users agree to the Terms of Service. See TOS 2022; TOS 2026; Sign Up Page 2022; Sign Up Page 2025.

Moreover, Robinson himself alleges that Meta discloses the potential use of audio data in this way. Compl. ¶ 102–03. He describes how Meta informs the user that it collects information, including "voice recordings which may be used to identify you when you use relevant features." Id.; U.S. Priv. Notice 2023 (dkt. 20-9) at 2

Second, that Meta did not use the word "voiceprint" in its disclosures does not undermine Robinson's authorization. The Ninth Circuit has held that a "contractual term is not ambiguous just because it is broad." F.B.T. Prods., LLC v. Aftermath Recs., 621 F.3d 958, 964 (9th Cir. 2010). Courts have extended the F.B.T. reasoning to terms of service agreements. See, e.g., Smith v. Facebook, Inc., 262 F. Supp. 3d 943, 954–55 (N.D. Cal. 2017) (granting motion to dismiss based on F.B.T. since Facebook's disclosures, although "vague," amounted to consent). Although Meta does not use the term "voiceprint," it specifically discloses its potential use of "voice recordings" to "identify" users for the purpose of "personalizing and improving products," such as "ads."[3] Compl. ¶¶ 72, 102, 104. Robinson agreed to this collection and use. Id. Accordingly, Robinson's argument fails on this point as well.

Third, Robinson's contention that he only partially consented is insufficiently supported. Robinson alleges that he used Meta's services for the "limited purpose of communicating through those applications." Compl. ¶ 111. But as discussed, Robinson's own allegations, combined with Meta's Terms, create an express assent to the data use at

[3] Robinson cannot have it both ways. He alleges that these disclosures support the allegations that Meta is using voiceprints, but he also wishes to have the Court infer that these broad disclosures do not also cover Meta's conduct in using the voiceprints. Compare Opp'n at 12 ("Defendant's privacy notice expressly admits that voice recordings 'may be used to identify' users."), with Opp'n at 11 ("Defendant's disclosures are scattered across the Privacy Center, the Privacy Policy, the U.S. Regional Privacy Notice, and various pop-ups, none of which explains the conduct at issue.").

United States District Court
Northern District of California

the heart of this action. Further, under Ninth Circuit precedent, Meta needs only "implied authorization" to avoid violating CDAFA. See Power Ventures, 844 F.3d at 1069. And Robinson does not allege either that he informed Meta that he limited his consent or that he revoked authorization. See generally Compl.

Robinson relies on Brown v. Google LLC ("Brown I") to argue that Meta's purported use of his data was outside the scope of the Terms. Opp'n at 9 (citing Brown I, 525 F. Supp. 3d 1049, 1075 (N.D. Cal. 2021)). But that case is inapposite. There, the plaintiffs alleged that Google used software scripts to direct its browser to collect information about browsing activity while in "incognito mode." 525 F. Supp. 3d at 1055–56. The plaintiffs further alleged that Google made representations that their data would be private when in this browsing mode. Id. at 1057. Unlike Google's representations, Meta's policy specifies that it may use voice recordings to identify the user. See Compl. ¶¶ 101–02. And unlike Brown I, where Google's code would have circumvented the ability to opt out, Robinson does not suggest that Meta acted "surreptitiously" or otherwise impeded efforts to opt out of data use. See 525 F. Supp. 3d at 1075.

Robinson further alleges that Meta did not have permission because the pop-up that appears when a user attempts to activate audio recordings does not contain enough information. Compl. ¶ 54–55. This pop-up states that "Messenger uses your device's microphone so you can do things like record video with sound, make voice and video calls, and create voice messages." Id. ¶ 54. He argues that it is insufficient because it does not reference the privacy policy or "seek consent related to biometric data or voiceprints," which renders any permission inadequate. Compl. ¶ 55; Opp'n at 11. But this notification necessarily comes after a user's initial consent to the Terms of Service, which authorizes use of voiceprint data. As discussed, Meta only needed authorization "in the first instance." Rimini, 879 F.3d at 962. By agreeing to the Terms of Service and other incorporated documents, Robinson provided this authorization.

The Court thus concludes Meta's did not knowingly and without permission access Robinson's data, and thus that they did not violate § 502(c)(3). At the hearing on this

motion, Robinson's counsel conceded that if the Court concluded he had consented to Meta's use of his data, there was no basis for him to amend his complaint to remedy this defect. See Tr. (dkt. 35) at 7.

## IV. CONCLUSION

For the foregoing reasons, Meta's motion is GRANTED and Robinson's complaint is hereby dismissed without leave to amend.

**IT IS SO ORDERED.**

Dated: September 15, 2026

CHARLES R. BREYER
United States District Judge

United States District Court
Northern District of California